962 P.2d 1033

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Terina L. CHARPENTIER, Defendant–Respondent.**

No. 23417.

Supreme Court of Idaho, Boise, January 1998 Term.

July 17, 1998.

Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General, Boise, for appellant. Michael A. Henderson argued.

Knowlton, Miles & Merica, P.A., Lewiston, for respondent. Charles E. Kovis argued.

## SUBSTITUTE OPINION THE COURT'S PRIOR OPINION DATED AUGUST 27, 1997, IS HEREBY WITHDRAWN.

SCHROEDER, Justice.

This case is on appeal from the district court's order suppressing evidence seized pursuant to a warrantless search of an automobile subsequent to the arrest of the driver. The district court granted the motion to suppress on the basis that Article I, § 17 of the Idaho Constitution provides greater protection against a warrantless search incident to arrest than does the Fourth Amendment of the U.S. Constitution. The Court of Appeals reversed the decision of the district court, and this Court granted review. The case is before the Court upon the State's petition for rehearing of this Court's prior opinion affirming the district court's decision.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

■ The parties do not dispute the facts as stated by the district court:

On August 31, 1994, Officer J. Mabey of the Lewiston Police Department, at approximately 2:00 p.m., observed a small white vehicle traveling at approximately 53 m.p.h. in a 35 m.p.h. speed zone. When Mabey stopped the car, he discovered that the driver's, Charpentier, driving privileges were suspended and further determined that her restricted license did not

extend to the period during which she was stopped. As a result, Charpentier was arrested for driving without privileges. She was handcuffed and placed in Mabey's patrol car. Mabey then returned to Charpentier's vehicle and, relying upon the search incident to arrest exception to the warrant requirement, searched the car and found a small amount of substance resembling marijuana and two plastic straws. He also found and opened a small pouch which in turn contained a plastic baggie in which a yellow-white substance and two plastic straws were found. The latter substance tested positive as Methamphetamine. Charpentier was charged with Possession of a Controlled Substance....

Charpentier moved to suppress use of the methamphetamine as evidence. The issue considered by the district court was "[w]hen a defendant, following a traffic stop, has been removed from a vehicle, handcuffed and placed in a patrol car, does Idaho Const. Art. I, § 17 permit a search of the passenger compartment of a vehicle, including containers, as an incident of that traffic arrest?" The district court ruled that although the search was permissible under the U.S. Constitution as interpreted in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), a "review of cases satisfies this Court that the issue of state constitutional protection has not been examined at the appellate level." The district court granted the motion to suppress, holding that protections under Article I, § 17 of the Idaho Constitution prohibited the search. The Court of Appeals reversed, finding that the Idaho Supreme Court implicitly addressed this issue in *State v. Smith*, 120 Idaho 77, 813 P.2d 888 (1991), when it stated that "Idaho has adopted the rule in *Belton*." *Id.* at 80, 813 P.2d at 891 (citing *State v. Calegar*, 104 Idaho 526, 661 P.2d 311 (1983)). This Court granted Charpentier's petition for review.

## II.

### STANDARD OF REVIEW

■ When considering a case on review from the Court of Appeals, this Court gives serious consideration to the views of the Court of Appeals; however, this Court reviews the trial court's decision directly. *State v. Avelar*, 129 Idaho 700, 702, 931 P.2d 1218, 1220 (1997). In other words, this Court is not merely reviewing the correctness of the Court of Appeals' decision; rather this Court is hearing the matter as if the case were on direct appeal from the trial court's decision. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995) (citing *Valley Bank v. Stecklein*, 124 Idaho 694, 696, 864 P.2d 140, 142 (1993)).

■ The facts in this case are not in dispute. This Court engages in a free review of whether the trial court correctly applied the law to the facts. *State v. Peightal*, 122 Idaho 5, 7, 830 P.2d 516, 518 (1992); *State v. Weber*, 116 Idaho 449, 451–52, 776 P.2d 458, 460–61 (1989).

## III.

### THE EVIDENCE WAS VALIDLY SEIZED PURSUANT TO A SEARCH INCIDENT TO THE ARREST.

In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court dealt with the question of whether, in the course of a search incident to the lawful custodial arrest of the occupants of an automobile, police may search inside the automobile after the arrestees are no longer in it. In *Belton*, a state policeman stopped a speeding automobile with four occupants. The officer directed the men to get out of the car and placed them under arrest for the unlawful possession of marijuana. The officer then searched the passenger compartment of the automobile where he found a jacket with cocaine inside a zipped pocket. The owner of the jacket, Belton, moved to suppress the cocaine that the officer had seized. The Supreme Court determined that the search was valid, stating that:

[W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

It follows from this conclusion that the police may also examine the contents of

any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.

*Id.* at 460–61, 101 S.Ct. 2860 (citations omitted).

The district court found, and Charpentier agrees, that the search in this case was valid under the United States Supreme Court's interpretation of the Fourth Amendment to the U.S. Constitution. However, the district court determined that Article I, § 17 of the Idaho Constitution provides greater protection to privacy rights and that, consequently, the search of Charpentier's car was invalid under the Idaho Constitution. This Court disagrees with the district court and concludes that the rule enunciated in *Belton* is the proper interpretation of what protections are provided by Article I, § 17 of the Idaho Constitution for the reasons set forth in *Belton* and additional considerations not articulated in that opinion. Consequently, the search of Charpentier's car was valid under the Idaho Constitution.

It is unlikely that there is any area of activity that places the police and public in contact with one another on a recurring basis more than the operation of a motor vehicle. Arrests are certain to occur in a number of cases, and there is a need for clear rules that give both the police and the public an understanding of what the police can and cannot do. The *Belton* court noted this need:

In short, "[a] single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront."

*Id.* at 458, 101 S.Ct. 2860 (quoting *Dunaway v. New York*, 442 U.S. 200, 213–14, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)).

The United States Supreme Court also noted that no straightforward rule had developed in either the federal cases or state cases on application of the Fourth Amendment protections respecting the question of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of the occupants—specifically, the right to search inside the automobile after the persons under arrest are no longer in the vehicle. The United States Supreme Court noted that "[w]hen a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority." *Id.* at 459–60, 101 S.Ct. 2860. Along this line, the *Belton* court made this observation:

"[The] Fourth Amendment doctrine, given force and effect by the exclusionary rule, is primarily intended to regulate the police in their day-to-day activities and thus ought to be expressed in terms that are readily applicable by the police in the context of the law enforcement activities in which they are necessarily engaged. A highly sophisticated set of rules, qualified by all sorts of ifs, ands, and buts and requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be 'literally impossible of application by the officer in the field.' "

*Id.* at 458, 101 S.Ct. 2860 (quoting LaFave, *"Case–by–Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma*, 1974 SUP.CT. REV. 127, 141).

In response to these concerns the United States Supreme Court adopted the rule that a police officer may search the passenger compartment of an automobile as a contemporaneous incident of the arrest, even if the occupant has been removed from the automobile. Further, the contents of any containers found within the passenger compartment may be searched, whether open or closed. Finally, the validity of the search is not dependent upon the nature of the container. *Id.* at 461, 101 S.Ct. 2860. The Court observed that "[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment;

that intrusion being lawful, a search incident to the arrest requires no additional justification." *Id.* (citing *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)).

The disarray in results noted by the United States Supreme Court and the need for a clear rule understood by both the public and the police are compelling reasons to adopt the rule enunciated in *Belton* as the proper interpretation of Article I, § 17 of the Idaho Constitution. There is nothing in our history or jurisprudence that indicates a contrary result should be reached. There is merit in having the same rule of law applicable within the borders of our state, whether an interpretation of the Fourth Amendment or its counterpart—Article I, § 17 of the Idaho Constitution—is involved. Such consistency makes sense to the police and the public.

Beyond the reasons articulated in *Belton,* there are other factors worthy of note. The use of the automobile on public roads is extensively regulated. Drivers must be licensed. The roadways belong to the public. There are insurance requirements for operators of automobiles. There are extensive safety requirements for automobiles. In some areas there are emission standards. Inspections are authorized for various purposes, and there are limitations on the window tinting that is allowed that would exclude vision into the vehicle. These rules do not address the issue of the search of an automobile directly. However, they are indicative of the fact that the automobile is not comparable to the home. The expectation of privacy within the automobile falls far short of that accorded the sanctuary of the home. The level of privacy due the automobile is satisfied by the requirement that there must be a lawful arrest of the occupant before a search of the contents may take place.

It is also important to know that when an arrest has been made of the occupant or occupants of an automobile that the automobile can be left untended with the assurance that any weapons, evidence of crime or contraband have been removed from the reach of passersby or confederates in unlawful activity. This is not always a concern, but it is a sufficient concern to address. It is important to have a clear rule that is not subject to the myriad of factual subtleties that engross lawyers and judges but evades practical application and understanding by those who must make decisions on the spot under stress.

Under the rule adopted by this Court, the police know what they can do after they have made a lawful arrest. The public knows the extent of protection afforded from a search while utilizing the automobile. The automobile is not a haven for weapons, contraband or evidence of criminal activity once the threshold requirement that there be a lawful arrest has been reached. It is well that people know that and guide their conduct accordingly. The rule adopted by the United States Supreme Court in *Belton* and by this Court is a workable rule that this category of cases requires. It is straightforward, easily applied and predictably enforced.

## IV.

## CONCLUSION

The order of the district court suppressing the evidence is reversed.

SILAK, J., and SMITH, J. Pro Tem., concur.

JOHNSON, Justice, dissents.

I respectfully dissent from the Court's opinion.

I cannot accept the adoption of the *Belton* rule as the Court's interpretation of Article I, § 17. The Court adopts a rule for our state constitution without any consideration of the manner in which this Court has previously interpreted Article I, § 17. As the Court said in a recent opinion in addressing the protection provided by the state constitutional protection against unreasonable searches and seizures before addressing any protection provided by the Fourth Amendment:

> The language of Art. I, § 17 of the Idaho Constitution closely parallels that of the Fourth Amendment. This similarity in language, however, does not require this Court to follow United States Supreme Court precedent in interpreting our own constitution.

The reason is that federal and state constitutions derive their power from independent sources. It is thus readily apparent that state courts are at liberty to find within the provisions of their own constitutions greater protection than is afforded under the federal constitutions as interpreted by the United States Supreme Court. This is true even when the constitutional provisions implicated contain similar phraseology. Long gone are the days when state courts will blindly apply United States Supreme Court interpretation and methodology when in the process of interpreting their own constitutions.

*State v. Newman,* 108 Idaho 5, 10, 696 P.2d 856, 861, n. 6 (1985) (citation omitted). *State v. Christensen,* 131 Idaho 143, 953 P.2d 583, 586 (1998).

The fundamental flaw in the Court's summary adoption of the *Belton* rule as the measure of protection provided by Article I, § 17 is that it is contrary to long-standing precedent of this Court concerning the permissible scope of a search incident to arrest under our state constitution. In *State v. Myers,* 36 Idaho 396, 211 P. 440 (1922), the Court succinctly stated this scope:

[I]f the arrest was lawful, and if the papers in question were taken at the time of the arrest ... and were *instrumentalities through which the crime charged against appellants were in part consummated,* the seizure was not violative of the provisions of our Constitution, the search being justifiable as an incident to the lawful arrest.

*Id.* at 407, 211 P. at 443 (emphasis added). This statement makes it clear that whatever the permissible scope of a search incident to arrest under the Fourth Amendment, *Myers* limited the scope under Article I, § 17 to "instrumentalities through which the crime charged ... [was] in part consummated."

In *State v. Conner,* 59 Idaho 695, 89 P.2d 197 (1939), the Court considered the protection provided by Article I, § 17 where there was an arrest for maintaining a nuisance in the form of a building where illegal alcoholic liquids were manufactured, sold, or kept. When the defendant was arrested pursuant to a warrant, "the sheriff made a search of the building and found 72 bottles containing whiskey, and 16 glasses." *Id.* at 703, 89 P.2d at 201. In upholding the seizure of this evidence, the Court said:

When the bottles of whiskey and the glasses were offered in evidence their admission was objected to, by appellant, on the ground that they were procured in a search made without a search-warrant in violation of his constitutional rights. Search and seizure, made incidental to a lawful arrest, is not prohibited as being unreasonable within the meaning of our constitution, art. I, sec. 17, and evidence seized is not thereby rendered inadmissible.

*Id.* at 704, 89 P.2d at 201. It is clear that the bottles of whiskey and the glasses were "instrumentalities through which the crime charged ... [was] in part consummated," as *Myers* referred to the permissible scope of a search incident to arrest.

In *State v. Parker,* 81 Idaho 51, 336 P.2d 318 (1959), a law enforcement officer arrested the defendant for driving under the influence of intoxicating liquor. Two officers then searched the defendant's car and seized two bottles of wine. *Id.* at 53–54, 336 P.2d at 319–20. Citing *Myers,* the Court upheld the admissibility of the bottles of wine on the ground that they had been seized incident to a lawful arrest. Clearly, the bottles of wine were "instrumentalities through which the crime charged ... [was] in part consummated," as *Myers* indicated.

In *State v. Loyd,* 92 Idaho 20, 435 P.2d 797 (1967), law enforcement officers arrested the defendants for burglary and seized from the vehicle in which the defendants were occupants before they were arrested a cash box taken from the burglarized premises. Citing *Myers,* the Court upheld the admissibility of the cash box as having been seized incident to a lawful arrest. *Id.* at 23, 435 P.2d at 800.

In *State v. Gonzales,* 92 Idaho 152, 438 P.2d 897 (1968), the Court considered the seizure of a .22 caliber cartridge incident to an arrest warrant on a charge of disturbing the peace. Apparently the basis for the charge was an altercation that had occurred

two days before in which the defendant was involved and in which a man was killed when he was struck in the head by a .22 caliber bullet. The Court described the arrest, as follows:

> The arrest occurred in defendant's apartment in Blackfoot. The arresting officer testified that after warning defendant of his "Miranda" rights, he asked defendant for permission to look around the apartment. Permission was given and in the course of the search a spent .22 caliber cartridge was discovered and seized by the officer.

*Id.* at 154, 438 P.2d at 899. In discussing the defendant's challenge to the admission of the cartridge at the trial for first degree murder, the Court noted that the defendant cited the Fourth and Fourteenth Amendments to the U.S. Constitution and Article I, § 13 and § 17 of the Idaho Constitution. *Id.* at 157, 438 P.2d at 902. In upholding the admissibility of the cartridge, the Court reasoned, as follows:

> The cartridge case was discovered in a search of defendant's apartment made in connection with, and incident to, a lawful arrest. Defendant contends that his consent to the search was involuntary, but, whether or not consent was voluntarily given, the exhibit was discovered as the result of a lawful search incident to the arrest, and was properly admitted. *See United States v. Rabinowitz,* 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); *Harris v. United States,* 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); *State v. Polson,* 81 Idaho 147, 339 P.2d 510 (1959); *State v. Parker,* 81 Idaho 51, 336 P.2d 318 (1959); *State v. Hart,* 66 Idaho 217, 157 P.2d 72 (1945); *State v. Conner,* 59 Idaho 695, 89 P.2d 197 (1939). It matters not whether the property seized be an instrumentality of the crime or "mere evidence." *Warden Md. Penitentiary v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

*Id.*

This refinement in *Gonzales* indicates that under Article I, § 17 the permissible scope of searches incident to arrest now extends to "instrumentalities through which the crime charged ... [was] in part consummated," as the Court said in *Myers* and applied in *Conner, Parker,* and *Loyd,* and to "mere evidence" of the crime for which the defendant was arrested, as the Court said in *Gonzales.*

In *State v. Cowen,* 104 Idaho 649, 662 P.2d 230 (1983), the Court considered the scope of protection under Article I, § 17 where the defendant was searched following arrest. The Court noted that "a warrantless search of a suspect's person incident to a lawful arrest is not an unreasonable search violative of the Constitution and that an officer who reasonably believes a suspect to be armed and dangerous may conduct a carefully limited pat down search of the suspect's outer clothing." *Id.* at 652, 662 P.2d at 233. This same standard is applicable to the search of a vehicle which a defendant was operating at the time of arrest. Only if the officer reasonably believes the vehicle contains weapons which the defendant might use may the officer conduct a search of the vehicle for weapons.

Applying Article I, § 17 as interpreted by this Court to the facts of the present case, I would suppress the use of the evidence seized from Charpentier's vehicle after her arrest for driving without privileges. There were no instrumentalities of the crime for which Charpentier was arrested, nor was any further evidence necessary. Also, there is no showing that the officer arresting Charpentier had any belief that the vehicle contained weapons which Charpentier might have used. Therefore, Article I, § 17 prohibited a search of Charpentier's vehicle incident to her arrest.

TROUT, C.J., concurs in dissent.