20 P.3d 5

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Anthony DONATO, Defendant–Appellant.**

No. 25924.

Supreme Court of Idaho,
Twin Falls, November 2000 Term.

March 1, 2001.

Andrew Parnes, Ketchum, for appellant, argued.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. Deputy Attorney General Karen A. Hudelson argued.

TROUT, Chief Justice.

Anthony J. Donato ("Donato") appeals the judgment of conviction entered upon his conditional guilty pleas to the felony offenses of

trafficking in marijuana by manufacturing and possession of marijuana with intent to deliver.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Donato challenges the affidavit supporting the search warrant for his home because it was based, in part, on information collected from Donato's curbside garbage. The police were provided information from an "anonymous" employee of a greenhouse that a man matching Donato's description and driving a car licensed to Donato had purchased several bags of potting soil and, in response to questioning by the informant, indicated he would be growing indoors during the winter and inquired about purchasing indoor grow lights. Based on this information, the police located Donato's car and determined where he lived. The police conducted two searches of Donato's garbage, which had been set at the edge of Donato's property for collection.

During the first search, three bags containing Donato's garbage had been placed in an opaque bag and put inside a trashcan at the edge of Donato's property. When an employee of the garbage collection company was preparing to dump the lidded trashcan into the garbage truck, an officer of the Blaine county Drug Task Force confiscated the trash. The bags were taken to the Blaine County sheriff's office, examined and inventoried. The bags were found to contain an empty pack of zig zag rolling papers, a small green leaf appearing to be marijuana, two root balls containing stems from a plant appearing to be marijuana, and a rolled-up newspaper containing green leaves also appearing to be marijuana. A similar search was conducted less than a month later revealing trash containing three root balls with stems and potting soil, small green leaves, an empty bag of rolling papers, and mail items addressed to Donato.

The police used this information to draft an affidavit of probable cause and obtained a search warrant to search Donato's home. During the search, police found evidence of growing marijuana. Donato was subsequent-ly indicted for trafficking in marijuana by manufacturing, two counts of failing to affix illegal drug tax stamps, and possession of marijuana with intent to deliver.

Donato filed a motion to suppress arguing the search of the garbage container violated the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution and therefore, the results of the searches must be suppressed, rendering the subsequent search warrant invalid. The district court denied the motion to suppress. Donato entered conditional guilty pleas to the felony offenses of trafficking in marijuana by manufacturing and possession of marijuana with intent to deliver, reserving the right to appeal the denial of the motion to suppress. Donato was sentenced to a unified six-year sentence with two years six months fixed on the trafficking count and a unified two-year sentence with one year fixed on the possession count. The district court ordered the sentences to run concurrently. Donato filed a timely notice of appeal.

## II.

## STANDARD OF REVIEW

■ In reviewing an order granting or denying a motion to suppress evidence, this Court will defer to the trial court's factual findings unless clearly erroneous. *State v. Medley,* 127 Idaho 182, 185, 898 P.2d 1093 (1995). However, free review is exercised over a trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found. *Id.,* 898 P.2d at 1096 (citing *State v. Weber,* 116 Idaho 449, 451–52, 776 P.2d 458, 460–61).

## III.

## DISCUSSION

■ The district court found, and Donato agrees, the search of his garbage was valid under the United States Supreme Court's interpretation of the Fourth Amendment to the U.S. Constitution. *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). However, Donato argues Article I § 17 of the Idaho Constitution provides greater protection to privacy rights

and, consequently, the search of his garbage was invalid under the Idaho Constitution. Article 1, § 17 of the Idaho Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized.

This section of the Idaho Constitution is substantially similar to the Fourth Amendment to the U.S. Constitution, which states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The purpose behind Article 1, § 17 of the Idaho Constitution parallels the statement of purpose given by the United States Supreme Court: "The Fourth Amendment and art. 1 § 17 are designed to protect a person's legitimate expectation of privacy, which 'society is prepared to recognize as reasonable'." *State v. Thompson,* 114 Idaho 746, 749, 760 P.2d 1162, 1165 (citing *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387, 401 (1978) (citations omitted)). The similarity of language and purpose, however, does not require this Court to follow United States Supreme Court precedent in interpreting our own constitution. *See id.* at 748, 760 P.2d at 1164 (citing *State v. Newman,* 108 Idaho 5, 10 n. 6, 696 P.2d 856, 861 n. 6 (1985); *State v. Johnson,* 110 Idaho 516, 520 n. 1, 716 P.2d 1288, 1292 n. 1 (1986)).

> State Courts are at liberty to find within the provisions of their constitutions greater protection than is afforded under the federal constitution as interpreted by the United States Supreme Court. *See, Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219 [43 L.Ed.2d 570, 576] (1975). This is true even when the constitutional provisions implicated contain similar phraseology. Long gone are the days when state courts will blindly apply United States Supreme Court interpretation and methodology when in the process of interpreting their own constitutions.

*Newman,* 108 Idaho at 10 n. 6, 696 P.2d at 861 n. 6. Although the United States Supreme Court establishes no more than the floor of constitutional protection, this Court has found there is "merit in having the same rule of law applicable within the borders of our state, whether an interpretation of the Fourth Amendment or its counterpart—Article I, § 17 of the Idaho Constitution—is involved. Such consistency makes sense to the police and the public." *State v. Charpentier,* 131 Idaho 649, 653, 962 P.2d 1033, 1037 (1998).

In *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the United States Supreme Court was presented with facts that closely parallel the facts of this case. In *Greenwood,* the police, acting off information indicating that Greenwood might be engaged in narcotics trafficking, twice obtained garbage bags from his regular trash collector that were left on the curb in front of Greenwood's house. *Id.* at 37–38, 108 S.Ct. at 1627, 100 L.Ed.2d at 34–35. The Court in *Greenwood* begins with the test for Fourth Amendment protection:

> The warrantless search and seizure of the garbage bags left at the curb outside the Greenwood house would violate the Fourth Amendment only if respondents manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable.

*Id.* at 39, 108 S.Ct. at 1628, 100 L.Ed.2d at 36 (citations omitted). The respondents in *Greenwood,* like Donato, argued they had a subjective expectation of privacy where the trash was placed for collection in opaque plastic bags, the collector was expected to pick up and mingle the trash with the trash of others and it was only temporarily on the street and unlikely to be inspected by anyone. The Court recognized that although the respondents may not have expected the contents of the garbage would become known to the police or other members of the public, "[a]n expectation of privacy does not give

rise to Fourth Amendment protection ... unless society is prepared to accept that expectation as objectively reasonable." *Id.* at 40, 108 S.Ct. at 1628, 100 L.Ed.2d at 36. The Court concluded society would not accept as reasonable the claim to an expectation of privacy in trash left for collection in an area accessible to the public and respondents had exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. *Id.* at 39–40, 108 S.Ct. at 1628, 100 L.Ed.2d at 36–37.

Donato argues our previous extensions of Article 1, § 17, are a guidepost for determining the scope of protection under Article 1, § 17 of the Idaho Constitution and should be followed to construe our Constitution to afford Idaho citizens a privacy right in their curbside garbage. Admittedly, we have previously found Article 1, § 17, in some instances, provides greater protection than the parallel provision in the Fourth Amendment of the U.S. Constitution. *See, e.g., State v. Webb,* 130 Idaho 462, 943 P.2d 52 (1997); *State v. Guzman,* 122 Idaho 981, 842 P.2d 660 (1992); *State v. Thompson,* 114 Idaho 746, 760 P.2d 1162 (1988). However, in these cases, we provided greater protection to Idaho citizens based on the uniqueness of our state, our Constitution, and our long-standing jurisprudence. None of these factors support a divergence from the interpretation of the Fourth Amendment by the United States Supreme Court in this case.

For example, in *State v. Webb,* 130 Idaho 462, 943 P.2d 52 (1997), we concluded the United States Supreme Court's definition of curtilage for Fourth Amendment analysis did not adequately reflect the privacy interests of Idaho citizens under Art. 1, § 17 of the Idaho Constitution. We did not reject the reasoning of the U.S. Supreme Court, but found the factors to determine curtilage as outlined by the U.S. Supreme Court in *United States v. Dunn,* 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) should be applied as "useful analytical tools." *Id.* at 467, 943 P.2d at 57. However, in formulating a definition of curtilage that would better ensure Idaho citizens' reasonable expectations of privacy were met, this Court found the *Dunn* factors should be applied in the context of the setting or locality of the residence itself, with

consideration given to the differences in custom and terrain within different areas of the state. *Id.* Our analysis in *Webb* was based on the unique rural tradition and custom in Idaho that defines Idahoans' sense of protected space, and expectation of privacy, within their property. The recognition of the differences in a rural and suburban home for the purposes of defining curtilage is a special consideration in Idaho. The protection of garbage is not. Whether in rural or suburban Idaho or New York City, garbage left at the curb for collection, outside the curtilage of a home, faces the same intrusion by neighbors, dogs, and children, and is turned over to a third party to be placed in a dump accessible to the public. The rural nature of Idaho does not change the analysis.

In addition, in *State v. Guzman,* 122 Idaho 981, 842 P.2d 660 (1992), this Court rejected the U.S. Supreme Court's good faith exception to the warrant requirement. Idaho's rejection of the U.S. Supreme Court's ruling in *U.S. v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which held that evidence obtained by the police in good-faith reliance on a warrant need not be suppressed, was supported by an independent exclusionary rule based on the state constitution that had developed over sixty-five years. *Guzman,* 122 Idaho at 991, 842 P.2d at 670. Idaho had clearly developed an exclusionary rule as a constitutionally mandated remedy for illegal searches and seizures in addition to other purposes behind the rule such as recognizing the exclusionary rule as a deterrent for police misconduct. *Id.* at 991–92, 842 P.2d at 670–71. When the U.S. Supreme Court in *Leon* abandoned the original purposes of the exclusionary rule as adopted by Idaho, and focused the rule solely as a deterrent to illegal police behavior, this Court did not follow. *Id.* at 993, 842 P.2d at 672. The holding in *Guzman* was based on long-standing jurisprudence regarding the Idaho Constitution. A similar history regarding the protection of garbage from warrantless searches does not exist.

Finally, in *State v. Thompson,* 114 Idaho 746, 760 P.2d 1162 (1988), we found the installation of a pen register device by the government to record numbers called and

the duration of calls made from a particular telephone was a search within the meaning of the Idaho Constitution and therefore required a warrant. 114 Idaho at 749, 760 P.2d at 1165. This holding is contrary to the U.S. Supreme Court's interpretation of the Fourth Amendment protections in *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), where the Court concluded the person on whose telephone line the pen register was installed "in all probability entertained no actual expectation of privacy in the phone numbers he dialed, and that, even if he did, his expectation was not 'legitimate'." 442 U.S. at 745, 99 S.Ct. at 2583, 61 L.Ed.2d at 229–230. Therefore, the U.S. Supreme Court held there was no search, and no warrant was required. *Id.* at 746, 99 S.Ct. at 2583, 61 L.Ed.2d at 230. This Court rejected the majority reasoning and instead adopted the analysis of Justice Stewart and Justice Marshall who wrote in dissent in *Smith*. *Thompson*, 114 Idaho at 749–50, 760 P.2d at 1165–67. Justice Stewart's reasoning, adopted by this Court, recognizes first "the 'vital role that the public telephone has come to play in private communication[s].'" *Id.* at 749, 760 P.2d at 1165 (quoting *Smith*, 442 U.S. at 746–48, 99 S.Ct. at 2583–84, 61 L.Ed.2d at 230–31). In addition, Stewart rejected the majority's reasoning that:

> [The Fourth Amendment] safeguards do not extend to the numbers dialed from a private telephone, apparently because when a caller dials a number the digits may be recorded by the telephone company for billing purposes. But that observation no more than describes the basic nature of telephone calls. A telephone call simply cannot be made without the use of telephone company property and with payment to the company for the service.

*Id.* Stewart concluded the list of numbers dialed should be protected "because it easily could reveal the identities of the persons and the places called, and thus reveal the most intimate details of a person's life." *Id.* at 750, 760 P.2d at 1166. This Court also excerpted Marshall's dissent, stating, "[p]rivacy in placing calls is of value not only to those engaged in criminal activity. The prospect of unregulated governmental monitoring will undoubtedly prove disturbing even to those

with nothing illicit to hide." *Id.* at 751, 760 P.2d at 1167. This Court specifically adopted these dissenting comments as "the interpretation that should be given to art. 1, § 17 of the Idaho Constitution as it applies to the use of pen registers in Idaho." *Id.*

Our reasoning in *Thompson* does not, however, justify broadening the protections of Article 1, § 17 to prohibit the warrantless search of garbage left at the curb for collection. Donato argues *Thompson* stands for the proposition that a legitimate expectation of privacy is not defeated merely because something is voluntarily conveyed to a third party. Donato may have had a subjective expectation of privacy where he tied the bags and placed them in closed containers at the curb, and conveying trash to a third party may not necessarily defeat an expectation of privacy in and of itself; however, Donato must still establish that a warrant was necessary to protect his "legitimate expectation of privacy, which society is prepared to recognize as reasonable." *Thompson*, 114 Idaho at 749, 760 P.2d at 1165 (citations omitted). The protection provided in *Thompson* is based on a legitimate and reasonable expectation of privacy that is inapplicable in this case.

The public holds some belief that conversations and information generated by telephone calls will remain private and will not be readily accessible to members of the public. The Supreme Court of Colorado relied on this expectation by the public when faced with the same question presented here. The Colorado court, just as this Court did in *Thompson*, held, contrary to the U.S. Supreme Court, that governmental installation of a pen register for a home telephone intrudes on a reasonable expectation of privacy under the Colorado Constitution. *See, People v. Sporleder*, 666 P.2d 135 (Colo.1983). However, when faced with the question of whether Colorado recognizes a privacy right in garbage placed for collection, the Colorado Supreme Court followed the majority rule delineated in *Greenwood*. *See, People v. Hillman*, 834 P.2d 1271, 1277 (Colo.1992). The Colorado court found their cases recognizing expectations of privacy in numbers dialed from a telephone and of bank records,

both involving transactions involving third parties, were distinguishable from garbage placed for collection "because individuals do not generally know that *members of the public* might inspect or snoop in and around their telephone or bank records." *Id.* at 1277, n. 14. Furthermore, there are circumstances where there is a duty of confidentiality by the telephone company, which would justify the common expectation that information generated by telephone calls and conversations would remain private. Clearly, there is no duty of confidentiality owed by garbage handlers.

██ In addition, the protected activity of making telephone calls can take place in the privacy of the home. The *Thompson* Court quotes Justice Marshall, stating that:

> Just as one who enters a public telephone booth is "entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world," so too, he should be entitled to assume that the numbers he dials in the privacy of his home will be recorded, if at all, solely for the phone company's business purposes.

114 Idaho at 751, 760 P.2d at 1167. A similar assumption is not reasonable for trash left out for collection. Although we diverged from the U.S. Supreme Court's analysis in *Smith*, this Court still accepts the reasoning of *Katz*, "one cannot have a reasonable expectation of privacy in what is knowingly exposed to public view." *State v. Christensen*, 131 Idaho 143, 953 P.2d 583 (1998)(citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576(1967); *State v. Clark*, 124 Idaho 308, 859 P.2d 344 (Ct.App.1993)). Garbage left out for collection, unlike telephone calls and information, is knowingly exposed to public view. As the Supreme Court recognized in *Greenwood:*

> It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," respondents could have no reasonable expectation of privacy in the inculpatory items that they discarded.

*Id.* at 40–41, 108 S.Ct. at 1628–29, 100 L.Ed.2d at 36–37 (internal footnotes and citations omitted).

## IV.

## CONCLUSION

We conclude the rule enunciated in *Greenwood* is the proper interpretation of the protections provided by Article I, § 17 of the Idaho Constitution. Donato has no reasonable expectation of privacy in items deposited in a public area, conveyed to a third-party for collection, and "readily accessible to animals, children, scavengers, snoops, and other members of the public." *Greenwood*, 486 U.S. at 40, 108 S.Ct. at 1629, 100 L.Ed.2d at 36–37. The order of the district court denying Donato's motion to suppress the evidence seized from his garbage is affirmed.

WALTERS and KIDWELL, JJ., concur.

Justice SCHROEDER, specially concurring.

I concur in the reasoning and result of the Court's opinion. I write separately solely to disavow the reasoning and results of *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992) and *State v. Thompson*, 114 Idaho 746, 760 P.2d 1162 (1988). That is enough said on *Guzman* and *Thompson* until this Court is presented with facts that rely on those cases as binding authority.

Senior District Judge McKEE, concurs.