**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 49710**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Boise, October 2024 Term** |
| | ) | |
| **v.** | ) | **Opinion Filed: November 29, 2024** |
| | ) | |
| **MICHAEL ANTHONY PULIZZI,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant-Appellant.** | ) | |
| _____ | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Benjamin J. Cluff, District Judge.

The district court's judgment of conviction is <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Kimberly A. Coster argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. John C. McKinney argued.

_____

BRODY, Justice.

Michael Anthony Pulizzi appeals his judgment of conviction for felony possession of methamphetamine, Idaho Code section 37-2732(c)(1), and destruction, alteration or concealment of evidence, Idaho Code section 18-2603. Pulizzi argues the district court erred in denying his motion to suppress evidence obtained as a result of several unlawful searches and seizures of trash he placed out for collection. According to Pulizzi, Twin Falls City's waste collection ordinances created an objectively reasonable expectation of privacy in his trash and, therefore, the warrantless searches and seizures of his trash violated his rights under Article I, section 17 of the Idaho Constitution. For the reasons below, we affirm Pulizzi's judgment of conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Over a period of roughly five months, detectives from the Twin Falls County Sheriff's Office conducted seven warrantless trash pulls from a garbage bin placed on the sidewalk outside the curtilage of Pulizzi's apartment. The bags were taken to another location, where their contents

1

were examined by various detectives. The detectives discovered drug paraphernalia in these bags and, based on this evidence, obtained and executed a search warrant on Pulizzi's apartment. During the search, the detectives found methamphetamine, marijuana, and drug paraphernalia throughout Pulizzi's residence. When questioned, Pulizzi also admitted to law enforcement he had attempted to flush a pipe and "baggies" down the toilet. The State subsequently charged Pulizzi with possession of a controlled substance, Idaho Code section 37-2732(c)(1); concealment and/or destruction of evidence, Idaho Code section 18-2603; possession of drug paraphernalia, Idaho Code section 37-2734A; and possession of a controlled substance, Idaho Code section 37-2732(c)(3). The State also alleged that Pulizzi was a persistent violator under Idaho Code section 19-2514 based on his two previous felony convictions for aiding and abetting burglary and possession of a controlled substance.

Pulizzi filed a motion to suppress, arguing he had a reasonable expectation of privacy in the garbage he placed out for collection and, thus, the warrantless searches and seizures of the garbage violated his rights under the Fourth Amendment of the United States Constitution and Article I, section 17, of the Idaho Constitution. Pulizzi acknowledged that the Supreme Court of the United States had rejected a similar argument in *California v. Greenwood*, 486 U.S. 35 (1988), and that this Court had rejected similar arguments in *State v. Donato*, 135 Idaho 46, 920 P.3d 5 (2001), and *State v. McCall*, 135 Idaho 885, 26 P.3d 1222 (2001), where we held that Article I, section 17 of the Idaho Constitution, did not afford greater privacy protections than the Fourth Amendment to such items. However, Pulizzi argued that his privacy interest was objectively reasonable because it was predicated on the Twin Falls City waste collection ordinance ("WCO"), which is contained in Chapter 3, Title 7 of the Twin Falls City Code. According to Pulizzi, the WCO created a reasonable expectation of privacy in his curbside garbage because it: (1) mandates residential participation in the city's waste collection program, and (2) prohibits anyone, other than authorized trash collectors, from collecting garbage for monetary gain.

At the hearing on the motion to suppress, a detective with Twin Falls County Sheriff's Office testified to the trash pull operation, the evidence obtained from the trash pulls, and the subsequent search of Pulizzi's residence. The detective further testified that he received no monetary gain from searching through Pulizzi's garbage. Pulizzi did not testify during the hearing.

The district court denied Pulizzi's motion to suppress. It determined Pulizzi failed to "provide[] . . . any reasonable basis upon which this [c]ourt could simply ignore the decades-old

controlling precedent of both the United States Supreme Court and the Idaho Supreme Court." In addressing the WCO, the district court concluded the ordinance did not create a reasonable expectation of privacy because (1) it did not require residents to participate in the trash collection program, as residents had other lawful methods to discard their trash; (2) the prohibition against collecting garbage for "monetary gain" had no application to police officers performing trash pulls; and (3) the purpose of the ordinance was to "to promote the health and safety of City residents and to prevent the spread of disease[,]" rather than "to restrict law enforcement officers from performing their lawful duty." Thereafter, Pulizzi pled guilty to possession of a controlled substance and concealment and/or destruction of evidence pursuant to a conditional plea agreement, preserving his right to appeal from the order denying his motion to suppress.

Pulizzi timely appealed.

## II.   STANDARDS OF REVIEW

"When this Court reviews a trial court's order granting or denying a motion to suppress evidence, the standard of review is bifurcated." *State v. Sutterfield*, 168 Idaho 558, 561, 484 P.3d 839, 842 (2021) (citing *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019)). "Unless clearly erroneous, this Court will accept the trial court's findings of fact." *Id.* (citing *Gonzales*, 165 Idaho at 671, 450 P.3d at 319). "This Court will, however, freely review the trial court's 'application of constitutional principles to the facts as found.' " *Id*. (quoting *State v. Bodenbach*, 165 Idaho 577, 589, 448 P.3d 1005, 1017 (2019)).

"Interpretation of an ordinance or statute is a question of law over which this Court exercises free review." *Rouwenhorst v. Gem County.*, 168 Idaho 657, 662, 485 P.3d 153, 158 (2021) (quoting *Lane Ranch P'ship v. City of Sun Valley*, 145 Idaho 87, 89, 175 P.3d 776, 778 (2007)).

## III.   ANALYSIS

On appeal, Pulizzi argues the district court erred when it determined the WCO did not create an objectively reasonable expectation of privacy because the district court misinterpreted the WCO. Pulizzi further argues this Court should reconsider its holdings in *State v. Donato*, 135 Idaho 469, 20 P.3d 5 (2001), and *State v. McCall*, 135 Idaho 885, 26 P.3d 1222 (2001), and instead conclude that the protections in Article I, section 17, of the Idaho Constitution extend to a citizen's trash when it is placed out for collection pursuant to a mandatory trash collection ordinance. However, Pulizzi has not pursued his claim that the WCO gave rise to a protected privacy right

3

under the Fourth Amendment. In response, the State argues that the district court correctly determined the WCO did not create an objectively reasonable expectation of privacy. We decline to reconsider our holdings in *Donato* and *McCall* and affirm the district court's order denying Pulizzi's motion to suppress.

Both the Fourth Amendment and Article I, section 17 protect "[t]he right of the people to be secure in their persons, houses, papers and effects" against unreasonable searches and seizures. U.S. Const. amend. IV; Idaho Const. art. I, § 17. "Like the Fourth Amendment, the purpose of [Article I, section] 17 is to protect Idaho citizens' reasonable expectation of privacy against arbitrary governmental intrusion." *State v. Albertson*, 165 Idaho 126, 129, 443 P.3d 140, 143 (2019) (quoting *State v. Christensen*, 131 Idaho 143, 146, 953 P.2d 583, 586 (1998)). Despite the similarity of language and purpose, "the protections afforded by these two constitutional provisions are not always coextensive." *State v. Pool*, 172 Idaho 47, 51, 529 P.3d 712, 716 (2023). Indeed, "[s]tate [c]ourts are at liberty to find within the provisions of their constitutions greater protection than is afforded under the federal constitution as interpreted by the United States Supreme Court." *Donato*, 135 Idaho at 471, 20 P.3d at 7 (quoting *State v. Newman*, 108 Idaho 5, 11 n.6, 696 P.2d 856, 862 n.6 (1985)); *see*, *e.g., State v. Webb*, 130 Idaho 462, 943 P.2d 52 (1997) (holding that Article I, section 17 provides broader protection for curtilage than that provided under the Fourth Amendment); *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992) (rejecting a good faith exception to the exclusionary rule under Article I, section 17); *State v. Thompson*, 114 Idaho 746, 760 P.2d 1162 (1988) (holding that the installation of a pen register device constitutes a warrantless search under Article I, section 17, which was otherwise lawful under the Fourth Amendment); *State v. Koivu*, 152 Idaho 511, 519, 272 P.3d 483, 491 (2012) (reaffirming Idaho's separate exclusionary rule and refusing to adopt the good-faith exception that arises under the Fourth Amendment).

"Although the United States Supreme Court establishes no more than the floor of constitutional protection, this Court has found there is 'merit in having the same rule of law applicable within the borders of our state, whether an interpretation of the Fourth Amendment or its counterpart—Article I, [section] 17 of the Idaho Constitution—is involved. Such consistency makes sense to the police and the public.' " *Donato*, 135 Idaho at 471, 20 P.3d at 7 (quoting *State v. Charpentier*, 131 Idaho 649, 653, 962 P.2d 1033, 1037 (1998)). Thus, as a general matter, "the federal framework is appropriate for analysis of state constitutional questions unless the state

constitution, the unique nature of the state, or Idaho precedent clearly indicates that a different analysis applies." *CDA Dairy Queen, Inc. v. State Ins. Fund*, 154 Idaho 379, 383, 299 P.3d 186, 190 (2013).

In *California v. Greenwood*, 486 U.S. 35 (1988), the United States Supreme Court held the Fourth Amendment does not "prohibit[] the warrantless search and seizure of garbage left for collection outside the curtilage of a home." *Id.* at 37. Like Pulizzi, the defendants in *Greenwood* were convicted of drug charges stemming from evidence taken from their garbage cans. *Id*. at 37–38. The Supreme Court explained that, while the defendants may have a subjective expectation of privacy in their curbside garbage, "[a]n expectation of privacy does not give rise to Fourth Amendment protection . . . unless society is prepared to accept that expectation as objectively reasonable." *Id.* at 39–40. The Supreme Court concluded society would not accept such expectations as objectively reasonable because the defendants had exposed their garbage to the public, in a readily accessible area, with the purpose of conveying the garbage to a third party:

> [W]e conclude that [defendants] exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public. Moreover, [defendants] placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through [defendants]' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage "in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it," [defendants] could have had no reasonable expectation of privacy in the inculpatory items that they discarded.

*Id.* at 40–41 (internal citations and footnotes omitted).

In the following years, state courts confronted the question of whether particular warrantless searches and seizures of one's garbage offended parallel provisions in state constitutions. *See generally* Kimberly J. Winbush, *Searches and Seizures: Reasonable Expectation of Privacy in Contents of Garbage or Trash Receptacle*, 62 A.L.R.5th 1 (1998). In *State v. Donato*, we addressed the issue of whether Article I, section 17 of the Idaho Constitution provides greater protection to privacy rights than those afforded by the Fourth Amendment in the context of warrantless searches and seizures of curbside garbage. *Id.* at 471–74, 20 P.3d at 7–10. In our analysis, we reviewed various Idaho cases where Article I, section 17 was interpreted to provide greater protection against warrantless searches. *Id.* at 472, 20 P.3d at 8. However, we determined that none of the factors in those cases—"uniqueness of our state, our Constitution, and our long-

standing jurisprudence"—supported a divergence from the United States Supreme Court's interpretation of the Fourth Amendment. *Id.* at 472, 20 P.3d at 8. In so doing, we explored and approved the Supreme Court's analysis of this issue in *Greenwood*:

> [T]he rule enunciated in *Greenwood* is the proper interpretation of the protections provided by Article I, [section] 17 of the Idaho Constitution. Donato has no reasonable expectation of privacy in items deposited in a public area, conveyed to a third-party for collection, and "readily accessible to animals, children, scavengers, snoops, and other members of the public."

*Id.* at 474, 20 P.3d at 10 (citing *Greenwood*, 486 U.S. at 40). On the same day this Court issued its opinion in *Donato*, we also issued our opinion in *State v. McCall*, 135 Idaho 885, 26 P.3d 1222 (2001). The *McCall* opinion addressed a similar challenge to a warrantless search and seizure of curbside garbage, which was disposed of on the same grounds as *Donato*. *Id.* at 887, 26 P.3d at 1224.

"Stare decisis requires that this Court follows controlling precedent unless that precedent is manifestly wrong, has proven over time to be unjust or unwise, or overruling that precedent is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *State v. Brown*, 170 Idaho 439, 443, 511 P.3d 859, 863 (2022) (quoting *State v. Owens*, 158 Idaho 1, 4–5, 343 P.3d 30, 33–34 (2015)). Those circumstances are not present here. Pulizzi has not demonstrated that the precedent established by *Donato* and *McCall* is manifestly wrong, unjust or unwise, or that overruling these precedents "is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Id*. (citation omitted). Moreover, our interpretation of the protections of Article I, section 17 is consistent with the United States Supreme Court's interpretation of the protections of the Fourth Amendment. "There continues to be merit in having the same rule of law applicable within the borders of our state, whether an interpretation of the Fourth Amendment or its counterpart—Article I, [section] 17 of the Idaho Constitution—is involved[]" as "[s]uch consistency make sense to the police and the public." *State v. Watts*, 142 Idaho 230, 233, 127 P.3d 133, 136 (2005) (internal quotation marks omitted) (quoting *Charpentier*, 131 Idaho at 653, 962 P.2d at 1037). Accordingly, there is no basis to revisit *Donato* and *McCall*.

Pulizzi argues that our holdings in *Donato* and *McCall* are not dispositive because they did not address whether a city's waste collection ordinance created a reasonable expectation of privacy in trash that is put out for collection in accordance with the ordinance's provisions. According to Pulizzi, the WCO creates this expectation because it: (1) requires the City's residents to place their trash out for collection in a publicly accessible space; (2) restricts who can collect garbage to

authorized contractors, and, therefore, prohibits law enforcement from collecting trash that is placed out for collection in accordance with the WCO; and (3) limits what the licensed and approved collector must do with that trash once it is collected. Pulizzi further argues our holdings in *Donato* and *McCall* "permit local authorities to command that citizens dispose of their personal effects in a manner that reveals all of the personal, private information that is contained in their trash to the police." Pulizzi therefore argues that these holdings should be modified in light of his objectively reasonable expectation of privacy in his trash. Pulizzi's interpretation of the WCO is strained for several reasons.

"The objective in interpreting a statute or ordinance is to derive the intent of the legislative body that adopted it." *Neighbors for a Healthy Gold Fork v. Valley County.*, 145 Idaho 121, 131, 176 P.3d 126, 136 (2007) (citing *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley Cnty*, 132 Idaho 551, 554, 976 P.2d 477, 480 (1999), *overruled on other grounds by City of Osburn v. Randel*, 152 Idaho 906, 908, 277 P.3d 353, 355 (2012)). "Where the language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction." *Id*. (citation omitted). "Language of a particular section need not be viewed in a vacuum. And all sections of applicable statutes must be construed together so as to determine the legislature's intent." *Id*. (quoting *Friends of Farm to Market, v. Valley County*, 137 Idaho 192, 197, 46 P.3d 9, 14 (2002)). In this case, neither party has argued—nor do we conclude—that the language of the WCO is ambiguous. Therefore, we need not consider rules of statutory construction when interpreting the WCO.

The WCO, as set forth in chapter 3, title 7 of the Twin Falls City Code, establishes a garbage collection scheme under the supervision of the Twin Falls City Council. Section 7-3-1 sets forth the WCO's purpose of promoting the general health, welfare, and safety of the people in the city:

> This Chapter is declared to be an ordinance to promote the general health, welfare and safety of the people in the City; and is enacted for the promotion and protection of the public health and safety; and to prevent nuisances, the spread of disease and fire hazards. It is the purpose of this Chapter to aid the people in keeping the City clean, safe, sanitary and free from petty annoyances and nuisances.

Section 7-3-8 grants the City Council authority "to provide for the collection of garbage and rubbish as a city function or by contract with one or more independent collectors," and also states that: "[n]o person or firm shall engage in the collection of garbage or rubbish for monetary gain unless authorized and licensed by the council . . . ." Section 7-3-10 instructs independent collectors

7

on equipment requirements, collection windows, and the drop off location for the garbage that is collected within the city. Relevant to this appeal, section 7-3-10 states: (1) "[t]he garbage portion of each conveyance . . . shall be . . . provided with tightfitting covers to remain closed at all times except during the actual depositing of garbage into or out of the conveyance[;]" and (2) "[a]ll garbage collected within the [C]ity . . . shall be deposited at the transfer station at 2186 Orchard Drive East, Twin Falls, Idaho."

The WCO also sets requirements and restrictions for storing garbage and placing it out for collection. Sections 7-3-3 and 7-3-4 require that all garbage and rubbish be placed in containers, and, under section 7-3-6, these containers must be placed in front of premises for collection (or in alley ways in certain circumstances). Absent special permission from the City Council, "[n]o user of a premise within the City shall be exempt from the collection and disposal service provided by the City or by individual collectors and licensees[.]" Twin Falls City Code § 7-3-12.

The district court determined that the WCO "does not require any resident to participate in the City's garbage collection program" and that residents were "free to discard of their trash in any other lawful manner[,]" such as contracting with other licensed garbage collectors, "hiring document shredding companies, burning their garbage (where lawful or otherwise obtaining a permit), or personally transporting their garbage to the county transfer station." The district court further concluded the ordinance "clearly does not apply to law enforcement officers" because its purpose is "to promote the health and safety of City residents and to prevent the spread of disease[,]" rather than to "restrict law enforcement officers from performing their lawful duty." Moreover, the district court concluded section 7-3-8's prohibition against unauthorized collection of garbage for "monetary gain" had no application to law enforcement performing trash pulls because they were not the garbage collection entities section 7-3-8 addressed, and they were not collecting Pulizzi's garbage for any type of monetary gain.

Pulizzi argues the district erred by misinterpreting the WCO because participation in the "City's collection trash collection program was mandatory" under section 7-3-12, and "placing his trash out for collection in a public place likewise was mandatory" under sections 7-3-3, 7-3-4, and 7-3-6. We disagree. The WCO does not require residents to dispose of their personal effects, including evidence of illegal drug use, into the garbage receptacles that are accessible to the public and law enforcement. As the district court noted, residents have other lawful means to discard their trash, such as burning their garbage after obtaining a permit or personally transporting their

8

garbage to the county transfer station. Furthermore, while section 7-3-12 states that residents are not exempt from participating in "the collection and disposal service provided by the City or by individual collectors and licensees," nothing in the WCO prohibits residents from creating an alternative garbage collection and disposal arrangement with a contractor that protects their private information.

Pulizzi argues the district court erred when it determined that the WCO did not prohibit law enforcement from conducting the trash pulls. Specifically, Pulizzi argues that section 7-3-8 prohibited law enforcement officers from searching his trash because they "were being paid to periodically collect Mr. Pulizzi's garbage," and thus "the detective's collection of [his] trash was for 'monetary gain' under the plain language of City Code [section] 7-3-8." This argument is also unavailing.

First, it is clear that law enforcement officers are not those "person[s] or firm[s]" that are prohibited from collecting garbage for monetary gain as contemplated under section 7-3-8. Instead, this provision is directed at *independent contractors* who were not "authorized and licensed" by the Twin Falls City Counsel to collect garbage within city limits. This reading is supported by: (1) the prior sentence in section 7-3-8, which establishes the City Council's authority to provide for the collection of garbage "as a city function or by contract with one or more independent collectors[;]" (2) the language conditioning this prohibition, (i.e. "for monetary gain" and "unless authorized and licensed by the council . . ."), and (3) the provision stating, "said council may establish the geographic limits for such collection." These provisions—along with the ordinance's stated purpose of "promot[ing] the general health, welfare and safety"—clearly establish that the intent of section 7-3-8 was to create a unified garbage collection scheme under City Council's supervision, rather than prohibiting suspicious detectives (or nosey neighbors) from rummaging through curbside garbage.

Second, we reject Pulizzi's argument that this prohibition applied to law enforcement because they were being paid a salary while conducting the trash pulls. As the State notes, the detective testified that he "would have been paid regardless of whether [he] pulled Mr. Pulizzi's trash or not[;]"and the district court found that "[n]one of the law enforcement officers involved in any of the trash pulls received any monetary gain from picking up and sifting through Defendant's trash."

Next, Pulizzi cites the Iowa Supreme Court's plurality decision *State v. Wright*, 961 N.W.2d 396 (Iowa 2021), for the proposition that he "did not abandon his privacy interest in his trash, because the City Code restricted the manner in which Twin Falls residents were permitted to dispose of waste." In that case, the Iowa Supreme Court held that a police officer violated a provision of the Iowa Constitution when he removed trash from a garbage can that had been put out for collection. *Id*. at 420. In the portions of the opinion that had the support of a majority, the court determined (1) the defendant had not abandoned his curbside garbage because an ordinance prohibited "any person" other than an authorized waste collector from taking or collecting solid waste that had been placed out for collection, *id.* at 415–16 (citation omitted); (2) the officer committed a trespass when conducting the garbage pull because he violated this ordinance; *id.* at 416–17; and (3) that the officer also violated the defendant's reasonable expectation of privacy based on the ordinance, *id.* at 418–19.

Pulizzi's reliance on *Wright* is misplaced for several reasons. First, unlike the ordinance in *Wright*, the WCO does not prohibit "any person" from taking garbage that is placed out for collection. Instead, section 7-3-8 only prohibits "person[s] or firm[s]" from collecting garbage "for monetary gain unless authorized and licensed by the council . . . ." As discussed above, this prohibition applies to independent garbage collectors. However, it does not apply to law enforcement. Furthermore, even if we interpreted this provision to broadly prohibit any person from taking garbage that is placed out for collection, this would not prevent nosy neighbors, curious kids, scavengers, or unpaid snoops from accessing this garbage, provided that they do not do so for "monetary gain."

Second, as the South Dakota Supreme Court explained, an objective expectation of privacy is not created simply because an ordinance aimed at maintaining society's interest in sanitation dictates how trash is to be collected:

> While city ordinances may, in some cases, be reflective of societal expectations of privacy, they do not manifest such an expectation simply because they dictate how persons are to place their trash for collection or how the trash is to be collected. Nothing in these ordinances suggests that Rapid City enacted them to protect a citizen's interest in garbage privacy. These ordinances were obviously enacted solely to maintain society's interest in sanitation.

*State v. Stevens*, 734 N.W.2d 344, 347–48 (S.D. 2007) (footnote omitted). Nothing in the WCO indicates that it was intended to promote society's privacy interest in the content of their curbside garbage. As the district court and the State emphasized, the WCO's express purpose is to "promote

10

the general health, welfare and safety" of its residents by "aid[ing] the people in keeping the City clean, safe, sanitary and free from petty annoyances and nuisances."

Lastly, the *Wright* court specifically rejected the Supreme Court's conclusion in *Greenwood* that "an expectation of privacy in garbage bags left outside the curtilage of a home was not objectively reasonable" based on the "common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public." *Wright*, 961 N.W.2d at 418 (quoting *Greenwood*, 486 U.S. 39–40). Rather, the *Wright* court concluded that under the Iowa state constitution, "[w]hen a citizen places garbage out for collection in a closed garbage bag, the contents of the bag are private, as a factual matter." *Id.* at 418. In contrast, this Court has explicitly concluded that the rule enunciated in *Greenwood* is the proper interpretation of the protections provided by Article I, section 17 of the Idaho Constitution. *State v. Donato,* 135 Idaho 469, 474, 20 P.3d 5, 10 (2001).

In sum, the plain language of the WCO does not support Pulizzi's argument that his expectation of privacy was objectively reasonable because the WCO was not intended to promote society's privacy interest in curbside garbage, and it does not interfere with the public's access—or law enforcement's access—to curbside garbage in any noteworthy way. Accordingly, Pulizzi "has no reasonable expectation of privacy in items deposited in a public area, conveyed to a third-party for collection, and 'readily accessible to animals, children, scavengers, snoops, and other members of the public.' " *Id.* (quoting *Greenwood*, 486 U.S. at 40). Because this conclusion is dispositive of Pulizzi's challenge to the district court's order, we do not address the State's alternative argument challenging Pulizzi's standing to dispute the search of his garbage.

### IV.    CONCLUSION

For the reasons set forth above, we affirm Pulizzi's judgment of conviction.

Chief Justice BEVAN, and Justices MOELLER, ZAHN and MEYER CONCUR.