**UNITED STATES for Use and Benefit of MIDWEST STEEL & IRON WORKS CO.**

v.

**HENLY et al.**

No. 2967.

United States District Court,
D. Idaho, S. D.

Jan. 4, 1954.

Langroise & Sullivan, Boise, Idaho, for plaintiff.

Richards, Haga & Eberle, and Oscar W. Worthwine, Boise, Idaho, for defendants.

CLARK, District Judge.

This action is brought by the plaintiff to recover from the defendant Henly and the Western Casualty and Surety Company under and by virtue of the authority conferred in an Act of Congress, August 24, 1935, c. 642, 49 Stat. 793, 40 U.S.C.A. § 270a et seq., commonly known as the Miller Act, relating to the furnishing of bonds by a contractor with the United States for public work. It is alleged that the plaintiff, The Midwest Steel and Iron Works Company, furnished, sold and delivered to the defendant company, a partnership, goods, wares and merchandise required in the construction of a bridge over Priest River in Bonner County, Idaho, which were used in the construction of such bridge, for which the defendant partnership failed to pay in the amount of $13,697.73, and that such amount is now due and owing. It is also alleged in Paragraph 10 of the complaint that Chapter 289, Idaho Session Laws 1951, provides as follows:

"Section 1. Any company, corporation, partnership, association, society, reciprocal, inter-insurance exchange, or fraternal or mutual benefit association or society, issuing any policy, certificate or contract of insurance, surety, guaranty, fidelity or indemnity of any kind or nature whatsoever, which shall fail to pay to the person, firm or corporation entitled thereto the amount justly due under such policy, certificate or contract, shall, in any action in any court in this state for recovery under the terms of such policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorneys' fees in such action. In any such action, if it shall be alleged that before the commencement thereof, a tender of the full amount justly due was made to the person, firm or corporation entitled thereto, and such amount be thereupon deposited in the court, and if the allegation be found to be true, or if it be determined in such action that no amount is justly due, then no such attorneys' fees may be recovered."

and in Paragraph XI of the complaint,

"That the plaintiff, The Midwest Steel & Iron Works Co., has employed attorneys for the purpose of instituting and prosecuting this action; that the sum of $2,000.00 is a reasonable sum to be allowed plaintiff for the fee of its attorney herein."

and in the prayer of the complaint an attorney fee of $2000.00 is prayed.

The defendants have tendered the amount sued for,—$13,697.73—into court in payment of the amount due on the contract, but such tender and acceptance by the plaintiff was made and accepted without prejudice to the additional claim of attorneys' fees or any costs of suit which may be allowed by law to any of the parties to this action upon its termination.

The defendants have filed a motion to strike Paragraphs X, XI, and that portion of the prayer asking for attorneys' fees. Briefs have been filed and the matter has been submitted to the court on said motion.

It is contended by the plaintiff in support of this motion that neither the Mil-

ler Act itself nor the bond in question make any provisions for the recovery of attorneys' fees. That the contract and bond in question were entered into and issued prior to the passage of the 1951 statute allowing attorneys' fees above set forth, and that there is nothing in the Statute giving it a retroactive effect and urges that this statute impairs the obligation of such a contract as the one in question here, and is unconstitutional as violative of Section 10, Article. 1 of the Constitution of the United States providing that no law can be enacted impairing the obligation of contract.

Many courts have undertaken to define what is meant by impairing the obligation of contract; however, the authorities are. uniform that laws having the import of the section in question here, when applied to a contract, do not deny the equal protection or the due process clause as contained in the Constitution. The rule is well stated in the case of Supreme Ruling of the Fraternal Mystic Circle v. Synder, 227 U.S. 497, 33 S.Ct. 292, 293, 57 L.Ed. 611, under a statute which provided

"That the several insurance companies of this state, and foreign insurance companies and other corporations, firms, or persons doing an insurance business in this state, in all cases when a loss occurs and they refuse to pay the same within sixty days after a demand shall have been made by the holder of said policy on which said loss occurred, shall be liable to pay the holder of said policy, in addition to the loss and interest thereon, a sum not exceeding 25 per cent on the liability for said loss; Provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury upon the holder or said policy; and provided, further, that such additional liability within the limit prescribed shall, in the discretion of the court or jury try-

ing the case, be measured by the additional expense, loss, and injury thus entailed.

"Section 2 * * * That in the event it shall be made to appear to the court or jury trying the cause that the action of said policy holder in bringing said suit was not in good faith, and recovery under said policy shall not be had, said policy holder shall be liable to such insurance companies, corporations, firms, or persons in a sum not exceeding 25 per cent of the amount of the loss claimed under said policy; Provided, that such liability, within the limits prescribed, shall, in the discretion of the court or jury trying the cause, be measured by the additional expense, loss, or injury inflicted upon said insurance companies, corporations, firms, or persons by reason of said suit."

It will be noted in that case that it was contended "that the provision for added liability placed a burden upon the assertion of the rights which the contract secured, and thus in effect changed the contract by allowing a recovery to which the parties had not agreed, and which was not sanctioned by the law as it existed at the time the contract was made."

The court said,

"What, then, is the effect of the statute with respect to pre-existing contracts? It is at once apparent that it does not purport to affect the obligation of the contract in any way. It does not attempt to change or to render nugatory any of the terms or conditions of the policy of insurance, or to relieve the insured from compliance with any stipulation it contained. It does not seek to give a right of action where none would otherwise exist, or to deprive the company of any defense it might have. If the company is not liable according to its contract, it is not required to pay. Nor does the statute permit a recovery of expenses

or added damages as a mere consequence of success in the suit."

The court also, in that opinion, stated, "The statute, judged by its provisions as they have been construed and applied, cannot be regarded as an impairment of the obligation of contract."

■ This being true, there is no necessity of going into this question further as it is well settled that such statutes do not impair the obligation of contracts.

It must still be noted, however, that the Supreme Court in the Fraternal Mystic Circle Case stated that "The question whether the state may so provide as to prior contracts is not before us, and we express no opinion upon it". This is important here, for the contract and bond in question in this action were entered into on November 15, 1950, and the Idaho statute in question was enacted subsequent to that date by the 1951 session of the Idaho Legislature.

■■ It must be remembered that under the police power of the state the legislature is authorized to regulate a bonding company such as the defendant here. As stated by the Supreme Court of Idaho in the case of Intermountain Lloyds v. Diefendorf, 51 Idaho 304, 5 P. 2d 730, 731, "public interest is so affected by the insurance business carried on in the state that private right of contract must be subjected to the police power", so right at the onset of this inquiry it must be said that this defendant could write no bond within the state of Idaho unless it complied with the law pertaining to it doing business within this state. Idaho has sought by statute to protect those suing on such bonds to the extent that if the bonding company is liable in such action that attorneys' fees could be recovered. And it is clear that the state had an interest in seeing that any bonding company doing business within this state should perform the obligation for which it had become liable.

■ Although there was no provision in the statute requiring attorney fees in connection with any bond until this statute was passed, any foreign corporation, whether it be a bonding company, life insurance company, or others, licensed to do business within the state of Idaho, have advance notice that they are subject to the police powers of the state, and as long as the state passes no law that impairs the obligation of the contract that they are within the provision of such statute.

Since the Mystic Circle case hereinbefore cited, the Supreme Court has answered the reservation made in that case in the case of Funkhouser v. J. B. Preston Co., 290 U.S. 163, 54 S.Ct. 134, 135, 78 L.Ed. 243, in which the court states:

"The statute in question concerns the remedy and does not disturb the obligations of the contract. * * * 'To enact laws providing remedies for a violation of contracts' and 'to alter or enlarge those remedies from time to time,' was within the competency of the Legislature. Waggoner v. Flack [188 U.S. 595, 23 S. Ct. 345, 47 L.Ed. 609], supra. The mere fact that such legislation is retroactive does not bring it into conflict with the guarantees of the Federal Constitution (League v. [State of] Texas, supra, page 161 of 184 U.S. [156], 22 S.Ct. 475, [46 L. Ed. 478, 481], and when the action of the Legislature is directed to the enforcement of the obligations assumed by the parties and to the giving of suitable relief for non-performance, it cannot be said that the obligations of the contract have been impaired. The parties make their contract with reference to the existence of the power of the state to provide remedies for enforcement and to secure adequate redress in case of breach. Henley v. Myers [215 U.S. 373, 30 S.Ct. 148, 54 L. Ed. 240], supra." See also Osborn v. Ozlin, 310 U.S. 53, 60 S.Ct. 758, 84 L.Ed. 1074.

The contract in question here was a contract to be performed in Idaho and the bond was given for its faithful per-

formance. The defendants failed to perform this obligation until after suit was filed. It was necessary in the preparation and filing of this action to employ attorneys. The bonding company was engaged in a business in this state, the entering into of which was permitted by the legislature. The defendants entered into this contract with knowledge of the existence of the police power of the state to provide such laws as will promote the general welfare of its people.

As has been stated in numerous decisions, all contracts are entered into with the understanding that the reserve power of the state to pass laws for the general welfare may be invoked at any time and therefore if the legislature in the proper exercise of that power is convinced that the public good demands that an insurance company unsuccessfully resisting payment should pay attorneys' fees, there is no constitutional objection to their doing so.

The Motion to Strike is denied, and it is so ordered.