# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38492

| | | |
|---|---|---|
| CDA DAIRY QUEEN, INC., and DISCOVERY CARE CENTRE, LLC OF SALMON, | ) ) ) | |
| | ) | Boise, August 2012 Term |
| Plaintiffs-Appellants, | ) ) | 2013 Opinion No. 44 |
| v. | ) ) | Filed: April 9, 2013 |
| STATE INSURANCE FUND, JAMES M. ALCORN, in his official capacity as its manager, and WILLIAM DEAL, WAYNE MEYER, GERALD GEDDES, JOHN GOEDDE, ELAINE MARTIN, MARK SNODGRASS, RODNEY A. HIGGINS, TERRY GESTRIN, and MAX BLACK, and STEVE LANDON, in their capacity as members of the Board of Directors of the State Insurance Fund, | ) ) ) ) ) ) ) ) ) ) ) ) | Stephen Kenyon, Clerk<br><br>SUBSTITUTE OPINION, THE COURT'S PRIOR OPINION DATED JANUARY 23, 2013 IS HEREBY WITHDRAWN. |
| Defendants-Respondents. | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Renae J. Hoff, District Judge.

The judgment of the district court is <u>reversed</u> and the case is <u>remanded</u> for proceedings consistent with this opinion.

Lojek Law Offices, Chtd., Boise, and Gordon Law Offices, Chtd., Boise, for appellants. Bruce Bistline and Donald Lojek argued.

Duke Scanlan & Hall, PLLC, Boise, for respondents. Keely Duke argued.

_____

HORTON, Justice.

CDA Dairy Queen, Inc. and Discovery Care Centre, LLC of Salmon (collectively, Dairy Queen) filed a class action against the Idaho State Insurance Fund (SIF) seeking a declaratory judgment that SIF violated Idaho Code § 72-915 by failing to distribute premium rate readjustments on a pro rata basis. The district court granted SIF's motion for summary judgment,

finding that the Idaho Legislature's retroactive repeal of Idaho Code § 72-915 was constitutional and that Dairy Queen's action was thereby barred. Dairy Queen timely appeals and argues that the retroactive repeal violates article I, § 16 of the Idaho Constitution. Dairy Queen asks this Court to reverse the decision of the district court and remand for further proceedings consistent with the determination that the retroactive repeal is unconstitutional. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In *Farber v. Idaho State Insurance Fund*, 147 Idaho 307, 311, 208 P.3d 289, 293 (2009) (*Farber I*), this Court held that Idaho Code § 72-915 required SIF to distribute any refund of its policyholders' premiums on a pro rata basis, considering each policyholder's proportion of total premiums paid. In response, the Legislature repealed Idaho Code § 72-915 retroactively to January 1, 2003. The repeal provided that its purpose was to address the *Farber* decision and maintain the continued viability of SIF as an efficient insurance provider. The repeal legislation was signed on May 6, 2009, and the *Farber I* decision became final on May 27, 2009.

Dairy Queen filed a class action complaint against SIF, seeking declaratory relief and damages. Dairy Queen then moved for partial summary judgment on the grounds that, if applied retroactively, the repeal violates article I, § 16 of the Idaho Constitution. SIF also filed a motion for summary judgment on the ground that the retroactive repeal does not violate the constitution of either Idaho or the United States. The district court denied Dairy Queen's motion and granted SIF's motion. A judgment dismissing Dairy Queen's claims with prejudice was entered on January 4, 2011.

## II. STANDARD OF REVIEW

"Both constitutional questions and questions of statutory interpretation are questions of law over which this Court exercises free review." *Stuart v. State,* 149 Idaho 35, 40, 232 P.3d 813, 818 (2010) (citing *Federated Publ'ns, Inc. v. Idaho Bus. Rev., Inc.,* 146 Idaho 207, 210, 192 P.3d 1031, 1034 (2008)). "The party challenging a statute or ordinance on constitutional grounds bears the burden of establishing that the statute or ordinance is unconstitutional and must overcome a strong presumption of validity." *State v. Korn*, 148 Idaho 413, 416, 224 P.3d 480, 483 (2009) (citing *State v. Reyes,* 146 Idaho 778, 203 P.3d 708 (Ct.App.2009)). "The judicial power to declare legislative action unconstitutional should be exercised only in clear cases." *Am. Falls Reservoir Dist. No. 2 v. Idaho Dep't Water Res.*, 143 Idaho 862, 869, 154 P.3d 433, 440 (2007) (citation omitted).

2

## III. ANALYSIS

As a preliminary matter, we note that SIF argues that this Court should affirm the district court's finding that the retroactive repeal of Idaho Code § 72-915 does not violate article I, § 10 of the United States Constitution. While neither party raised this as an issue on appeal, Dairy Queen appeals from both the district court's judgment in favor of SIF and from its order denying Dairy Queen's motion for summary judgment. In that order, the district court found the retroactive repeal constitutional under both the state and federal constitutions. Thus, it appears that SIF requests this relief to prevent Dairy Queen from raising the issue in a subsequent appeal on federal grounds. Although the district court's conclusion regarding the federal constitution is inconsistent with our holding today, we will not address this issue. Under the Idaho Appellate Rules, "an appellant's failure to include in his initial appellate brief a fair statement of an issue presented for review results in waiver of the issue." *Weisel v. Beaver Springs Owners Ass'n, Inc.*, 152 Idaho 519, 525, 272 P.3d 491, 497 (2012); Rule 35(a)(4). Because Dairy Queen did not address this issue in its opening brief, the issue is waived.

**A. This Court will apply federal contract clause principles when determining whether a statute violates article I, § 16 of the Idaho Constitution.**

Dairy Queen argues that the retroactive repeal of Idaho Code § 72-915 to January 1, 2003, violates article I, § 16 of the Idaho Constitution because it impairs valid contracts that existed at the time the repeal was enacted. SIF responds that the retroactivity does not violate the Idaho Constitution because, even if some contract rights were affected, there was no substantial impairment of any right. However, before we can make this determination, the threshold question of whether the federal contracts clause analysis applies must be decided.

SIF contends that the analytical framework federal courts use when deciding federal contracts clause cases is applicable in Idaho courts to determine whether a legislative act violates the contracts clause of the Idaho Constitution. Dairy Queen argues that the federal methodology is not relevant in challenges based upon the state constitution because Idaho precedent demonstrates that the Idaho Constitution provides greater protection than the United States Constitution. We hold that Idaho courts should apply federal analytical principles when deciding challenges under article I, § 16 of the Idaho Constitution because the state constitution is not more protective of contracts than the federal constitution.

3

**1. This Court follows federal precedent and uses federal methodology when analyzing state constitutional issues unless the Idaho Constitution clearly provides greater protection than the United States Constitution.**

Generally, the federal framework is appropriate for analysis of state constitutional questions unless the state constitution, the unique nature of the state, or Idaho precedent clearly indicates that a different analysis applies. We explained the policy basis for this Court's preference for consistent interpretations of the state and federal constitutions in *State v. Donato*:

> Although the United States Supreme Court establishes no more than the floor of constitutional protection, this Court has found there is "merit in having the same rule of law applicable within the borders of our state, whether an interpretation of the Fourth Amendment or its counterpart-Article I, § 17 of the Idaho Constitution- is involved. Such consistency makes sense to the police and the public.

135 Idaho 469, 471, 20 P.3d 5, 7 (2001) (quoting *State v. Charpentier,* 131 Idaho 649, 653, 962 P.2d 1033, 1037 (1998)). Thus, this Court will consider federal rules and methodology when interpreting parts of the Idaho Constitution that have an analogous federal provision.

However, it is clear that the state constitution sometimes provides greater protection than the federal constitution. In those cases, this Court does not "blindly apply United States Supreme Court interpretation and methodology" when interpreting the state constitution. *State v. Newman*, 108 Idaho 5, 11 n.6, 696 P.2d 856, 862 n.6 (1985) (citing *Oregon v. Hass,* 420 U.S. 714, 719 (1975)), *holding modified by State v. Bitt*, 118 Idaho 584, 798 P.2d 43 (1990). For example, in *Donato*, the defendant admitted that the State's search of trash he placed on the curb for collection was valid under federal interpretation of the Fourth Amendment, but argued that the search violated the prohibition against unreasonable searches and seizures found in article I, § 17 of the Idaho Constitution because the state constitution provides greater protection against searches. 135 Idaho at 470-71, 20 P.3d at 6-7. In its analysis, this Court recognized that article I, § 17 of the Idaho Constitution "in some instances, provides greater protection than the parallel provision in the Fourth Amendment of the U.S. Constitution." *Id.* at 472, 20 P.3d at 8 (citations omitted). However, we then limited the circumstances in which we would find this kind of greater protection. In examining the cases where this Court had found greater protection in article I, § 17, we explained that "in these cases, we provided greater protection to Idaho citizens based on the uniqueness of our state, our Constitution, and our long-standing jurisprudence." *Id.* The Court found that those factors did not apply in the context of searches of trash placed out in public, and adopted the federal rule as the proper interpretation of article I, § 17. *Id.* at 474, 20

4

P.3d at 10. Therefore, when interpreting the Idaho Constitution, this Court will use federal rules and methodology unless clear precedent or circumstances unique to the state of Idaho or its constitution indicates that Idaho's constitution provides greater protection than the analogous federal provision.

**2. Idaho's contracts clause does not provide greater protection than the contracts clause in the United States Constitution.**

There is no clear evidence that article I, § 16 of the Idaho Constitution provides greater protection of contracts than article I, § 10 of the United States Constitution. First, the language of the Idaho contracts clause employs the language found in the federal contracts clause, albeit in a different sequence. The United States Constitution provides: "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10, cl. 1. In Idaho's Constitution, the provision is: "No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall ever be passed." Idaho Const. art. I, § 16. Dairy Queen contends that the Idaho drafters' addition of the word "ever" demonstrates that they found the protection provided by the federal contracts clause insufficient. However, there is no substantial basis for this argument. Read literally, both provisions absolutely ban laws that would impair "the obligation of contracts," and an absolute prohibition cannot be made "more absolute." The inclusion of an extra word, which merely makes the implicit duration of the ban into an explicit duration, does not suggest the drafters' intent to provide greater protection. More importantly, the framers themselves apparently did not find the word "ever" to be remarkable. When article I, § 16 was adopted at the Idaho constitutional convention, there was no discussion of its language; the provision was read and adopted without debate. I.W. Hart, *Proceedings & Debates of the Constitutional Convention of Idaho 1889* vol. I at 371; vol. II at 1634 (Caxton 1912).

Next, Idaho's "uniqueness" does not have the same significance with respect to contracts that it does in the context of expectations of privacy. In *State v. Webb*, this Court held that when an Idaho trial court determines the extent of the curtilage in search and seizure cases, it should consider the factors used by federal courts, but "should apply them in the context of the setting or locality of the residence itself" and "take into consideration the differences in custom and terrain within different areas of the state when contemplating particular expectations of privacy." 130 Idaho 462, 467, 943 P.2d 52, 57 (1997). The Court then announced a "broader test" than used by federal courts, which provides greater protection of Idahoans' reasonable expectations of

privacy. *Id.* at 468, 943 P.2d at 58. Our interpretation of article I, § 17 in *Webb* was based upon "the unique rural tradition and custom in Idaho that defines Idahoans' sense of protected space, and expectation of privacy, within their property." *Donato*, 135 Idaho at 472, 20 P.3d at 8. However, while we recognized that "the differences in a rural and suburban home for the purposes of defining curtilage is a special consideration in Idaho," we held that protecting discarded trash is not such a consideration. *Id.* In this case, nothing about Idaho's rural nature or in the geographical particulars of the state obviously supports a reading of its constitution that includes enhanced protection of contracts.

Finally, no "long-standing" jurisprudence clearly suggests that the Idaho Constitution contains an absolute prohibition against any impairment of contracts. Dairy Queen does not cite any cases in which this Court has expressly held that the Idaho Constitution provides more protection than the federal constitution. Instead, it argues that Idaho precedent establishes an "absolutist" interpretation of article I, § 16, to which there are "no exceptions," and that has remained "unquestioned" for 89 years. This argument is not persuasive as this Court has both recognized exceptions and generally followed federal interpretation of the contracts clause.

There is at least one recognized exception to the constitutional protection of contracts. For almost 100 years, this Court has recognized the police power exception to the contracts clause in the context of regulating labor contracts and public utilities.[1] In 1916, the Court upheld an Idaho statute permitting employees to claim up to thirty days' wages from employers as a penalty for non-payment of wages due, even if the labor contract between those parties did not contemplate such a penalty.[2] The Court held that as "a legitimate exercise of the police power of the state," the statute did not violate article I, § 16 of the Idaho Constitution. *Olson v. Idora Hill*

---

[1] Like labor and public utilities, the insurance industry is highly regulated and its contracts are subject to the state's police power because "[the insurance] business is affected with the public interest and the private rights of contract in relation thereto must be and are subjected to the valid exercise of the police power by the legislature." *Penrose v. Comm. Travelers Ins. Co.*, 75 Idaho 524, 537, 275 P.2d 969, 976 (1954) (citing *Intermountain Lloyds v. Diefendorf*, 51 Idaho 304, 5 P.2d 730 (1931)).

[2] The law at issue provided that:

> Whenever any employer of labor shall hereafter discharge or lay off his or its [employees] without first paying them the amount of any wages or salary then due them, in cash, lawful money of the United States, or its equivalent, or shall fail or refuse on demand to pay them in like money, or its equivalent, the amount of any wages or salary at the time the same becomes due and owing to them under their contract of employment, whether employed by the hour, day, week or month, each of his or its [employees] may charge and collect wages in the sum agreed upon in the contract of employment for each day his employer is in default until he is paid in full, without rendering any service therefor: Provided, however, he shall cease to draw such wages or salary thirty (30) days after such default.

Act of March 7, 1911, Session Laws 1911, Chapter 170 at 565.

*Mining Co.*, 28 Idaho 504, 518, 155 P. 291, 296 (1916). In an earlier case, the Court stated that franchise contracts between the state and a public utility "must be held not to be protected by any provision of the state or federal Constitution against the proper exercise by the state of its police power." *Idaho Power & Light Co. v. Blomquist*, 26 Idaho 222, 258, 141 P. 1083, 1094 (1914). The Court reiterated this exception in *Agricultural Products Corporation v. Utah Power & Light Company*, holding that the state's regulation of utility rates pursuant to its police power, including statutory alteration of rates set by private contracts, was "not a violation of the constitutional prohibition against impairment of contractual obligations." 98 Idaho 23, 29, 557 P.2d 617, 623 (1976) (citing *Law v. R.R. Comm'n of Calif.*, 184 Cal. 737, 195 P. 423 (1921)). Of course, the police power is not unlimited, "and the state may not interfere with a utility contract unless it finds that the rate 'is so low as to adversely affect the public interest-as where it might impair the financial ability of the public utility to continue its service, cast upon other consumers an excessive burden, or be unduly discriminatory.'" *Bunker Hill Co. v. Wash. Water Power Co.*, 98 Idaho 249, 253, 561 P.2d 391, 395 (1977) (quoting *Fed. Power Comm'n v. Sierra Pac. Power Co.*, 350 U.S. 348, 355 (1956)). Thus, the Court has recognized a limited exception, based upon the state's police power, to the protection provided by article I, § 16 of the Idaho Constitution.

Idaho cases also indicate that this Court does not interpret Idaho's contracts clause more strictly than federal courts interpret article I, § 10 of the United States Constitution. In early cases, this Court consistently cited federal precedent when deciding challenges under article I, § 16 of the Idaho Constitution. *Highway Dist. No. 1 of Fremont Cnty. v. Fremont Cnty.*, 32 Idaho 473, 476, 185 P. 66, 67 (1919) ("The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced; by which the parties can be obliged to perform it.") (quoting *State of Louisiana v. City of New Orleans*, 102 U.S. 203 (1880)); *In re Fidelity State Bank of Orofino,* 35 Idaho 797, 811, 209 P. 449, 453 (1922) (holding that statutes causing material changes to a contract are void, as are laws that affect available remedies so as "substantially to impair and lessen the value of the contract . . .") (quoting *Edwards v. Kearzey*, 96 U. S. 595, 607 (1877)); *Sanderson v. Salmon River Canal Co.* 45 Idaho 244, 263 P. 32, 36 (1927) (holding that laws affecting the value of a contract may nonetheless be constitutional because not "every statute which affects the value of a contract impair[s] its obligation") (quoting *Curtis v. Whitney*, 80 U.S. 68, 69 (1871)); *Steward v. Nelson*, 54 Idaho 437, 443, 32 P.2d 843, 846 (1934) (stating that a law denying or obstructing "the rights accruing by a contract,

7

though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution") (citing *Brine v. Hartford Fire Ins. Co.*, 96 U.S. 627 (1877)).

Dairy Queen argues that in *Penrose v. Commercial Travelers Insurance Company*, 75 Idaho 524, 275 P.2d 969 (1954), this Court recognized that federal precedent was trending toward allowing limited exceptions to contracts clause protections and decided not to adopt this new federal framework. The relevant issue in *Penrose* was the applicability of a statute requiring insurance companies to pay reasonable attorney fees to its policy holders in cases where the policyholder prevailed in an action to recover benefits. 75 Idaho at 529, 275 P.2d at 971. In that case, the policyholder prevailed in an action to recover certain policy benefits and was awarded attorney fees pursuant to the challenged statute, even though his policy was issued before the statute was enacted. *Id.* at 537, 275 P.2d at 976. On appeal, this Court vacated the award of attorney fees, holding that application of a statute enacted after the policy was issued would impair the obligation of the contract and thus violate article I, § 16. *Id.* at 540, 275 P.2d at 978.

A few months prior to the *Penrose* decision, a federal court considered the same Idaho statute and held that it did not violate the federal contracts clause. In that case, the federal court held that all contracts are executed with the parties' understanding of the state's police power, and therefore, if the legislature determines "that the public good demands that an insurance company unsuccessfully resisting payment should pay attorneys' fees, there is no constitutional objection to their doing so." *Midwest Steel & Iron Works Co. v. Henly*, 117 F. Supp. 928, 932 (D. Idaho 1954). The analysis in *Midwest Steel* indicates that the court considered the statute to act upon the "enforcement of the obligations assumed by the parties and to the giving of suitable relief for non-performance," which it held did not affect the obligation of the contract because "parties make their contract with reference to the existence of the power of the state to provide remedies for enforcement and to secure adequate redress in case of breach." *Id.* at 931 (citing *Henley v. Myers*, 215 U.S. 373 (1910); *Osborn v. Ozlin*, 310 U.S. 53 (1940)).

Dairy Queen thus contends that the decision in *Penrose*, in which this Court cited *Midwest Steel* while reaching the opposite conclusion, demonstrates that Idaho courts interpret article I, § 16 to provide more protection than the federal provision. Neither *Penrose* nor our decisions since support this argument. In *Penrose*, the dissent by Justice Givens was the majority on the contracts clause issue. 75 Idaho at 540, 275 P.2d at 978-79. However, Justice Givens merely states that the statute "impairs the obligation of contract," and neither he nor the Justices

8

concurring with him cite any case or provide any other information regarding their underlying reasoning. *Id.* Instead, he writes that "[a]uthorities supporting this proposition [that the challenged statute impairs the obligation of contract] are cited in the majority opinion and it is unnecessary to add thereto, although there are others to like effect." *Id.* at 540, 275 P.2d at 979. While the majority opinion does cite some cases in support of what it terms "the minority rule," none of those cases are from Idaho. *Id.* at 538-39, 275 P.2d at 977-78. Without some explanation of the rationale for the decision, *Penrose* is simply a case in which this Court disagreed with a federal court's interpretation of the Idaho Constitution. Consequently, Dairy Queen's assertion – that *Penrose* signals a departure from this Court's past adherence to federal precedent because Idaho's contracts clause is more protective than the federal provision – is not supported by the conclusory analysis in the *Penrose* dissent.

Further, in cases since *Penrose*, the Court has continued to cite federal precedent and has given no indication that it finds the state constitution more protective of contracts than the federal constitution. For example, in *State v. Korn*, we began our analysis of the defendant's contracts clause claim by quoting *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 241 (1978). 148 Idaho 413, 415-16, 224 P.3d 480, 482-83 (2009). Additionally, in the context of the police power exception, we cited the United States Supreme Court in holding that a public utility commission may "annul or supersede contract rates between utilities and their customers."[3] *Agric. Prods. Corp.*, 98 Idaho at 29, 557 P.2d at 623 (citing *Midland Realty Co. v. Kansas City Power & Light Co.*, 300 U.S. 109 (1937); *Atlantic C. L. R. Co., v. Goldsboro*, 232 U.S. 548 (1914)). The following year, we again cited the Supreme Court of the United States in noting that the contracts clause limits that exception. *Bunker Hill*, 98 Idaho at 253, 561 P.2d at 395 (quoting *Fed. Power Comm'n v. Sierra Pac. Power Co.*, 350 U.S. 348 (1956)). In none of these cases did our contracts clause analysis refer to Idaho authority.[4] Consequently, because neither the constitution of Idaho, the nature of the state, nor long-standing precedent demonstrate that the

---

[3] In addition to citing federal authority, the Court quoted article I, § 16 and explained that by its application, "[a]ny contract is thus assured *some measure* of protection from governmental interference." *Agric. Prods. Corp.*, 98 Idaho at 28-29, 557 P.2d at 622-23 (emphasis added). This language indicates that the Court interprets article I, § 16 as providing something less than absolute protection.

[4] In *Agricultural Products*, the Court did cite Idaho authority for the proposition that the state may regulate public utilities. 98 Idaho at 29, 557 P.2d at 623 (citing *Sandpoint Water & Light Co., Ltd., v. City of Sandpoint*, 31 Idaho 498, 173 P. 972 (1918)). *Bunker Hill* subsequently cited *Agricultural Products*. Neither case cited Idaho contracts clause precedent.

protection provided by the Idaho Constitution is greater than the protection provided by the United States Constitution, we hold that challenges based upon article I, § 16 should be evaluated under the federal framework and rules.

**B. The retroactive repeal of Idaho Code § 72-915 violates the Idaho Constitution because it substantially impairs existing contracts.**

The federal framework for determining whether a legislative act violates the contracts clause is a three-step analysis. The first step is to determine whether the challenged legislative enactment "has 'operated as a substantial impairment of a contractual relationship.'" *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (quoting *Allied Structural Steel,* 438 U.S. at 244). This threshold inquiry also has three parts: 1) whether a contractual relationship exists, 2) whether the challenged legislative enactment impairs that relationship, and 3) whether that impairment is substantial. *Id.* When considering whether a contractual relationship exists, the test is not merely whether the parties have some contractual relationship, "but whether there was a 'contractual agreement regarding the specific . . . terms allegedly at issue.'" *Id.* at 187; *see also Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 504 (1987) (holding that the analysis begins "by identifying the precise contractual right that has been impaired."). Therefore, a legislative act does not violate the contracts clause unless there is a contractual relationship between the parties regarding the specific terms at issue, the challenged act impairs an obligation under that contract, and that impairment is substantial.

If the challenged legislative action is found to substantially impair a contract, the analysis then proceeds to the remaining two steps: whether the act serves "an important public purpose," and whether the act is "reasonable and necessary" to advance that purpose. *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1, 25 (1977). First, substantial impairment may be permissible where there is "a significant and legitimate public purpose behind the regulation, such as the remedying of a broad and general social or economic problem." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983) (citations omitted). However, even if a legitimate public purpose exists, the Court must still determine whether the act is based "upon reasonable conditions and [is] of a character appropriate to the public purpose justifying its adoption." *U.S. Trust Co.*, 431 U.S. at 22 (citing *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 445-47 (1934)). Thus, even substantial impairment may be permissible, but only where it is reasonable and necessary to advance a legitimate public purpose.

**1. The retroactive repeal of Idaho Code § 72-915 substantially impairs Dairy Queen's contract rights.**

Dairy Queen argues that its policy with the SIF includes a contractual right to a premium-based pro rata share of any dividends and that retroactive repeal of I.C. § 72-915 constituted a substantial impairment of that right. The SIF contends that there was no contractual right to dividends based upon that methodology, or alternatively, that if such a right did exist, the repeal did not substantially impair the contract. We hold that the retroactive repeal substantially impairs Dairy Queen's contractual rights because the dividend is a part of the consideration.

#### a. The retroactive repeal impairs a contractual right.

A contractual relationship exists regarding the specific term at issue in this case. The United States Supreme Court has recognized the principle that "the laws which subsist at the time and place of the making of a contract . . . enter into and form a part of it . . . ." *Gen. Motors*, 503 U.S. 181, 188 (1992) (quoting *Home Bldg. & Loan Ass'n,* 290 U.S. at 429-430). That Court also noted that in general, the only laws incorporated into a contract, absent the parties' agreement, are those that affect "the validity, construction, and enforcement of" the contract. *Id.* at 189 (citing *U.S. Trust Co.,* 431 U.S. at 19 n.17). In this case, Idaho's workers' compensation statutes create statutory contract rights related to SIF's premium structure and rate readjustment procedures. We recently held that the premium provision set forth in Idaho Code Chapter 9, Title 72, "are written into, and become an integral part of, SIF's workers' compensation insurance policies." *Farber v. State Ins. Fund*, 152 Idaho 495, 498, 272 P.3d 467, 470 (2012) (*Farber II*). The statutes are essential to the contracts and their enforcement because the actual SIF policies do not mention the premium amount or how it is calculated and no valid contract could exist without the statutes. *Id.* at 497-98, 272 P.3d at 469-70. Thus, Dairy Queen's contractual relationship with SIF includes the premium structure and dividend distribution provision as part of the consideration.

The next question is whether the retroactive repeal of Idaho Code § 72-915 impairs the contractual relationship between Dairy Queen and SIF. To impair a contract is to "diminish the value of" the contract. Black's Law Dictionary 819 (9th ed. 2009). In this case, under former Idaho Code § 72-915, the decision to offer a dividend or rate readjustment was within the Manager's discretion. Former I.C. § 72–915 (Repealed by act effective May 6, 2009, ch. 294, § 1(6)). Even so, repealing the statute that provides for the possibility of a premium refund reduces

11

the maximum possible value of the contract to Dairy Queen. Therefore, the retroactive repeal impairs the contract.

### b. The impairment is substantial.

If a court determines that a legislative act has impaired a contract, the final step in the threshold inquiry is to decide whether the contractual impairment is substantial. In making this determination, courts consider several factors, such as whether the impairment eliminates an important contractual right, defeats an expectation of the parties, or creates a significant financial hardship for one party. Thus, in *United States Trust Co.*, the United States Supreme Court invalidated the retroactive repeal of a statutory covenant that New York and New Jersey enacted to limit the Port Authority's ability to use its reserves to pay future deficits created from operation of new facilities. 431 U.S. at 32. The statute was enacted to protect the interest of the holders of the bonds sold to finance the Port Authority and to promote investor confidence. *Id.* at 9-10, 18. The Court held that the statute was a contract between the bondholders and the states and that its retroactive repeal substantially impaired the contract by eliminating an important security provision. *Id.* at 19. In another case involving bonds, voters in Washington State passed an initiative that restricted a state municipal corporation's contractually-granted ability to sell bonds. *Cont'l Ill. Nat. Bank & Trust Co. of Chicago v. Wash.*, 696 F.2d 692, 695-96 (9th Cir. 1983). The Ninth Circuit held that the statute substantially impaired the contract because the ability to issue bonds "is essential to the performance of its contracts," and restricting that ability "defeats the expectations of the parties under their contracts." *Id.* at 700 (citing *Allied Structural Steel Co.,* 438 U.S. at 246-48); *see also S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 890-92 (9th Cir. 2003) (holding that because the statute affected "a right at the heart of the [contract]," the impairment was substantial even though the financial impact was "relatively small . . .").

In another case, the Ninth Circuit held that a statute constituted a substantial impairment of an employment contract because the statute permitted the state to delay its employees' pay dates and excepted the provision from the negotiation process. *Univ. of Haw. Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1099 (9th Cir. 1999). The court agreed with the district court's conclusion that a "pay lag would likely impose a substantial hardship on many employees who would not be able to meet their financial obligations such as mortgage payments in a timely manner," reasoning that the employees had the right to rely on timely payment and that "[e]ven a

12

brief delay in getting paid can cause financial embarrassment and displacement . . . ." *Id.* at 1104-06. Idaho cases have also considered impairments that affected important terms or involved the complete elimination of an important right. *See, e.g.*, *Curtis v. Firth*, 123 Idaho 598, 610, 850 P.2d 749, 761 (1993) (holding that a change to the statute governing actions on notes secured by deeds of trust was unconstitutional because it eliminated one remedy, the right to sue on the note without first foreclosing on the deed of trust); *Steward v. Nelson*, 54 Idaho 437, 442-43, 32 P.2d 843, 845 (1934) (holding that statutes that reduced the time during which a mortgage-holder could foreclose, even if the debt was still owing, violated the contracts clause because they would "take away the remedy of foreclosure . . . and leave[] no remedy of equal or similar value" to replace it, effectively destroying "the prevailing consideration for the contracts in so far as the mortgagee was concerned"). Thus, impairment may be substantial where a legislative act impairs essential rights, defeats a party's expectations, or has significant financial consequences for a party.

In this case, Dairy Queen argues that retroactive repeal of I.C. § 72-915 substantially impairs its contracts because the dividend payments are essentially a partial refund of the consideration Dairy Queen paid for the insurance. SIF contends that the contracts are primarily about insurance in exchange for premiums and that partial, discretionary refunds are not an important part of the contracts. We held in *Farber II* that the statutes in Chapter 9, Title 72 "are essential to establish the consideration to be paid by the insured, and to be received by SIF," without which "there could be no valid contract." *Farber II*, 152 Idaho at 498, 272 P.3d at 470 (citing *Vanderford Co., Inc. v. Knudson*, 150 Idaho 664, 672, 249 P.3d 857, 865 (2011)). Consideration is a necessary element to forming a valid contract. *Sirius LC v. Erickson*, 150 Idaho 80, 85, 244 P.3d 224, 229 (2010). Consequently, the legislative act at issue in this case, as in *U.S. Trust* and *Continental Illinois*, adversely affects an essential element of the contracts between the parties. We therefore hold that the retroactive repeal of Idaho Code § 72-915 substantially impairs those contracts.

**2. The retroactive repeal of Idaho Code § 72-915 is not reasonable and necessary to support a significant and legitimate public purpose.**

This Court has held that SIF serves a "public purpose." *Selkirk Seed Co. v. Forney*, 134 Idaho 98, 103-04, 996 P.2d 798, 803-04 (2000) (quoting *State ex rel. Williams v. Musgrave*, 84 Idaho 77, 85, 370 P.2d 778, 782 (1962)). However, to survive application of the contracts clause where a state law substantially impairs a contract, the law must have a "significant and legitimate

13

public purpose," to ensure that it is an exercise of the state's police power and not merely "providing a benefit to special interests." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (quoting *Energy Reserves*, 459 U.S. at 412). Thus, the legislative act under review must itself be reasonable and necessary to advance an important public purpose.

Here, we cannot glean a legitimate public purpose for the retroactive repeal from the legislative history. The statement of purpose in the act repealing Idaho Code § 72-915 indicates that the repeal was in response to this Court's decision in *Farber I*, which required that rate readjustments be paid on a pro rata basis, in order to "clarify the law regarding the payment of dividends . . . ." In text of the repeal itself, the legislative intent is "that the State Insurance Fund should operate like an efficient insurance company . . . ." The statutes governing SIF require its board of directors to "direct the policies and operation of the state insurance fund to assure that the state insurance fund is run as an efficient insurance company, remains actuarially sound and maintains the public purposes for which the state insurance fund was created." I.C. § 72-901(3). While SIF itself exists to serve a public purpose, the same cannot be said of the retroactive repeal of Idaho Code § 72-915.

Dairy Queen recognizes, as do we, that the repeal of I.C. § 72-915 has prospective effect. That repeal became effective May 6, 2009, upon the Governor's signature.

## IV. CONCLUSION

We reverse the district court's order finding the retroactive repeal of Idaho Code § 72-915 to be constitutional and its judgment dismissing all of Dairy Queen's claims and remand this case for proceedings consistent with this opinion. Costs to Dairy Queen.

Chief Justice BURDICK and Justices J. JONES, W. JONES and Justice Pro Tem KIDWELL **CONCUR**.