**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51162**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Opinion Filed: August 26, 2025** |
| Plaintiff-Respondent, | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| v. | ) | |
| | ) | |
| WILLIAM J. SATTERFIELD, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Brent L. Whiting, District Judge.

Order denying motion to suppress, affirmed; judgment of conviction, affirmed.

Erik R. Lehtinen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Amy J. Lavin, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

William J. Satterfield appeals from his judgment of conviction for unlawful possession of a firearm and a persistent violator sentencing enhancement. Satterfield argues the district court erred in denying his motion to suppress because the Nampa City Police officer did not have jurisdiction to arrest Satterfield in the city of Caldwell, resulting in an extraterritorial arrest. Satterfield asserts that an extraterritorial arrest violates Article I, Section 17 of the Idaho Constitution and, thus, the evidence seized should be suppressed. The State argues that an extraterritorial arrest is a statutory violation, not a constitutional violation, so suppression is not warranted. This Court holds that an extraterritorial arrest does not violate Article I, Section 17 of the Idaho Constitution. The district court's order denying Satterfield's motion to suppress and Satterfield's judgment of conviction are affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Nampa City Police Officer Salladay had information that Satterfield had an active arrest warrant from the State of Idaho Commission of Pardons and Parole, was classified as a fugitive by the Idaho Department of Correction, and was in Caldwell, Idaho. Officer Salladay drove to Caldwell, located Satterfield, effected a traffic stop, and arrested him on the outstanding warrant. Satterfield's passenger was also arrested on an outstanding warrant. After Satterfield's arrest, narcotics and a stolen firearm were found in his vehicle. Satterfield was charged with grand theft by possessing stolen property, Idaho Code §§ 18-2403(4), -2407(1)(b), unlawful possession of a firearm, I.C. § 18-3316, possession of drug paraphernalia, I.C. § 37-2734A, and was alleged to be a persistent violator pursuant to I.C. § 19-2514.

Satterfield filed a motion to suppress and a brief in support, arguing that his extraterritorial arrest was unlawful pursuant to I.C. § 67-2337, and because it was unlawful, it was unconstitutional under the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution, and thus, the evidence obtained following his arrest should have been suppressed. The State responded by arguing that: (1) the arrest was lawful because there was a valid arrest warrant; (2) Officer Salladay complied with an inter-city policing compact between Nampa and Caldwell; (3) if the arrest as a law enforcement officer was unlawful, then Officer Salladay was performing a citizen's arrest; (4) because Officer Salladay was a specially deputized United States Marshall for fugitive apprehension, he had federal authority to arrest Salladay on a state warrant anywhere in Idaho; and (5) even if the arrest constituted a statutory violation, it was not a constitutional violation and suppression was not warranted.

The district court held a hearing on the motion, took the matter under advisement, and issued a written decision. The district court concluded that, although the arrest was an extraterritorial arrest for which there were no statutory exceptions, the statutory violation did not rise to the level of a constitutional violation under either the Fourth Amendment or Article I, Section 17 of the Idaho Constitution, and as a result, there was no basis for suppressing the evidence.

Pursuant to a plea agreement, Satterfield pleaded guilty to unlawful possession of a firearm and admitted that he is a persistent violator, and the State dismissed the grand theft by possessing stolen property and possession of drug paraphernalia charges. Satterfield appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The relevant facts of this case are unchallenged. Neither party contests that Satterfield had an active, valid warrant for his arrest or that Officer Salladay effected an extraterritorial arrest in violation of I.C. § 67-2337(2). Thus, the only issue before this Court is whether the extraterritorial arrest violated Article I, Section 17 of the Idaho Constitution and, if so, should the evidence obtained as a result of the arrest be suppressed. We conclude the arrest did not violate the Idaho Constitution and, thus, suppression is not warranted.

Both the Fourth Amendment and Article I, Section 17 protect "[t]he right of the people to be secure in their persons, houses, papers and effects" against unreasonable searches and seizures. U.S. CONST. amend. IV; IDAHO CONST. art. I, § 17. Like the Fourth Amendment, the "purpose of [Article I, Section] 17 is to protect Idaho citizens' reasonable expectation of privacy against arbitrary governmental intrusion." *State v. Albertson*, 165 Idaho 126, 129, 443 P.3d 140, 143 (2019). Despite the similarity of language and purpose, "the protections afforded by these two constitutional provisions are not always coextensive." *State v. Pool*, 172 Idaho 47, 51, 529 P.3d 712, 716 (2023). Indeed, "[s]tate [c]ourts are at liberty to find within the provisions of their constitutions greater protection than is afforded under the federal constitution as interpreted by the United States Supreme Court." *State v. Donato*, 135 Idaho 469, 471, 20 P.3d 5, 7 (2001).

Satterfield argues that this case is one in which our state constitution should be interpreted to apply greater protection than is afforded under the federal constitution. He argues that because Article I, Section 17 was passed without debate, we do not have the words of the framers and, thus,

3

this Court should look to the common law and statutes in effect at the time, which required arrests be made within the local jurisdiction. Satterfield argues that because the Idaho Constitution provided for the regulation of local police and the common law territorially limited the authority of local police, Article I, Section 17's prohibition on unreasonable searches and seizures should be read to protect against unlawful arrests, which include unauthorized extraterritorial arrests. According to Satterfield, "the requirement that a peace officer have *lawful* police authority when the officer deprives individuals of their liberty is a principle embodied in the Idaho Constitution, and as such, an unauthorized extraterritorial arrest violates Article 1, [S]ection 17 of the Idaho Constitution."

The Idaho Supreme Court addressed how to construe the Idaho Constitution in *State v. Clarke*, 165 Idaho 393, 397, 446 P.3d 451, 455 (2019):

> When construing the Idaho Constitution, "the primary object is to determine the intent of the framers." The best resource is the compilation of the Proceedings and Debates of the Constitutional Convention of Idaho 1889 (I.W. Hart ed., 1912). Unfortunately, Article I, section 17 was adopted without debate. In the absence of the words of the framers, rights guaranteed by the state constitution are "examined in light of the practices at common law and the statutes of Idaho when our constitution was adopted and approved by the citizens of Idaho." This Court has long taken this approach to interpreting our state constitution.

Despite the statement in *Clarke*, it appears there was debate about Article I, Section 17 prior to its adoption. Black's Law Dictionary (12th ed. 2024) defines debate as: "[f]ormal consideration of a motion's merits in the form of speeches for, against, or otherwise addressing the motion." The motion to adopt Article I, Section 17 was "otherwise addressed" when two amendments were proposed and voted upon. One of those amendments addressed the issue in this case--whether the term "unlawful" should be read into Article I, Section 17. On that issue, the intent of the framers was clear; the framers explicitly rejected the idea. When Article I, Section 17 was proposed, the secretary read Section 17, and it was moved and seconded that the section be adopted. The first amendment was then made and seconded. A second amendment was then offered:

> Mr. SINNOTT. I have an amendment which I wish to offer.
> SECRETARY reads: Substitute the word "unlawful" for the word "unreasonable" in the second line. (Seconded).
> The CHAIR. The amendment is offered to strike out the word "unreasonable" and insert the word "unlawful." (Vote). The motion is lost.

Proceedings and Debates of the Constitutional Convention of Idaho of 1889, vol. 1 at 372 (I.W. Hart ed., 1912). Because the only place the term "unreasonable" appears in Article I,

4

Section 17 is in the phrase "unreasonable searches and seizures," there is only one place where that substitution could occur. As a result, we know that the framers explicitly rejected the idea that an arrest had to be lawful to be constitutional. And as the Supreme Court noted in *Clarke*, "Because many of the delegates to the Constitutional Convention were outstanding lawyers in their day, we generally presume that they knew and acted on such prior and contemporaneous interpretations of constitutional words which they used." *Clarke*, 165 Idaho at 397, 446 P.3d at 455. Accepting that to be true, then we must also accept that the framers knew exactly what they were doing when they rejected the idea that a seizure (in this case, an arrest) had to be lawful to be constitutional under Article I, Section 17. In light of the framers' explicit intent, we need not look to the practices of common law or the statutes in effect at the time to attempt to discern the framers' intent.

The Idaho Supreme Court has held that, generally, "there is 'merit in having the same rule of law applicable within the borders of our state, whether an interpretation of the Fourth Amendment or its counterpart--Article I, [Section] 17 of the Idaho Constitution--is involved. Such consistency makes sense to the police and the public.'" *Donato*, 135 Idaho at 471, 20 P.3d at 7 (quoting *State v. Charpentier*, 131 Idaho 649, 653, 962 P.2d 1033, 1037 (1998)). Thus, as a general matter, "the federal framework is appropriate for analysis of state constitutional questions unless the state constitution, the unique nature of the state, or Idaho precedent clearly indicates that a different analysis applies." *CDA Dairy Queen, Inc. v. State Ins. Fund*, 154 Idaho 379, 383, 299 P.3d 186, 190 (2013). As discussed above, because the framers of Idaho's constitution explicitly rejected any substantive language differences between the Idaho and federal search and seizure provision, there is nothing otherwise unique about Idaho or our precedent that would dictate we analyze Article I, Section 17 any differently than we do the Fourth Amendment. Thus, we will use federal rules and applicable analysis to interpret the Idaho Constitution. *CDA Dairy Queen, Inc.*, 154 Idaho at 384, 299 P.3d at 191.

The United States Supreme Court has held that an extraterritorial arrest does not violate the Fourth Amendment. In *Virginia v. Moore*, 533 U.S. 164 (2008), the issue was whether a police officer violates the Fourth Amendment by making an arrest based on probable cause but prohibited by state law. *Moore*, 533 U.S. at 166. The Court held that there was no Fourth Amendment violation even though police officers violated state regulations. *Moore*, 533 U.S. at 172. The Court held that the "Fourth Amendment's meaning did not change with local law enforcement

5

practices--even practices set by rule." *Moore*, 533 U.S. at 172. The Court further noted, "[a] State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional." *Id*. at 174.

Idaho's Supreme Court addressed whether an officer violates the Fourth Amendment by conducting an investigatory stop based on reasonable suspicion but prohibited by state law and concluded there was no Fourth Amendment violation. In *State v. Benefiel*, 131 Idaho 226, 953 P.2d 976 (1998), the Court held that conducting an investigatory stop based on reasonable suspicion by tribal law enforcement outside a tribal reservation did not violate the Fourth Amendment. *Benefiel*, 131 Idaho at 229, 953 P.2d at 979. In Justice Schroeder's concurrence, he wrote:

> The officer's actions complied with the standards for a constitutionally permissible investigatory stop. What he violated was a statutory limitation upon his authority to act. Refusal to suppress the evidence does not condone conduct by officers that exceed their authority or jurisdiction. Adequate sanctions exist other than the exclusion of evidence to deter such conduct, including potential civil liability and criminal prosecution. The officer's actions met constitutional standards, though he acted outside his jurisdiction.

*Id*. at 230.

Both the federal courts and Idaho courts have held that the Fourth Amendment is not violated by an extraterritorial exercise of authority. Because we interpret Article I, Section 17 consistently with the Fourth Amendment, then, like its federal counterpart, Article I, Section 17 is not violated by an arrest based on probable cause but prohibited by state law. As a result, Satterfield's extraterritorial arrest, while violative of I.C. § 67-2337(2), was not violative of Article I, Section 17 of the Idaho Constitution.

In the absence of a constitutional violation, there is no basis upon which to suppress the evidence obtained. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963) (holding the exclusionary rule bars the use of physical evidence and verbal statements obtained as a result of a Fourth Amendment violation); *see also State v. Phelps*, 131 Idaho 249, 253, 953 P.2d 999, 1003 (Ct. App. 1998) (holding dismissal of a charge is not the appropriate remedy when an officer acts outside his jurisdiction in obtaining evidence). Satterfield does not argue that suppression of the evidence is an appropriate remedy for the statutory violation; consequently, there is no other basis argued to justify suppression in this case.

6

Although Satterfield argues that both *Benefiel* and *Phelps* are distinguishable because Article I, Section 17 was not addressed in either of the opinions, as discussed above, Article I, Section 17 is analyzed similarly to the Fourth Amendment so whether Article I, Section 17 was explicitly mentioned in those cases does not affect the analysis in this case or limit the applicability of the holdings in *Benefiel* and *Phelps* to the outcome of this case. Thus, the district court did not err in denying Satterfield's motion to suppress.

## IV.

## CONCLUSION

The district court did not err in concluding that although Officer Salladay effected an extraterritorial arrest, that arrest did not violate Article I, Section 17 of the Idaho Constitution and, as such, there was no basis upon which to suppress the evidence. The district court's order denying Satterfield's motion to suppress and Satterfield's judgment of conviction are affirmed.

Judge LORELLO and Judge TRIBE, **CONCUR**.